**Donna PERRIN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2572.**

Supreme Court of Alaska.

Dec. 5, 1975.

Frank S. Koziol, Jr., Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

ERWIN, Justice.

Appellant Donna Jean Perrin was convicted upon her plea of guilty to the crime of attempting to pass a forged check with the intent to defraud under AS 11.25.-020(2).[1] The trial judge imposed a sentence of eighteen months. Appellant has appealed to this court, contending that the sentence she received is excessive[2] and, in addition, that the trial judge failed to articulate sufficient reasons for imposing the sentence he did.

In 1969 the Alaska Legislature enacted legislation providing for appellate review of criminal sentences.[3] The primary goal of the sentence review statute, AS 12.55.-120,[4] was to implement Alaska's constitutional mandate that "Penal administration shall be based on the principle of reformation and upon the need for protecting the public."[5] Sentence review by this court must be carried out with a view to effectuate the purposes of the Constitution and the 1969 act. In implementing these provisions, the court has recognized the following goals of criminal sanctions: (1) Rehabilitation of the convicted offender into a non-criminal member of society; (2) Isolation of the offender from society to prevent criminal conduct during the period of confinement; (3) Deterrence of the other

---

1. AS 11.25.020(2) provides:

   A person who, with intent to injure or defraud another . . . (2) knowingly utters, publishes, passes, or tenders in payment as true and genuine, a false, altered, forged, or counterfeited bill, note, draft, check, or other evidence of debt or has in his possession that evidence of debt, with intent to utter or pass it as true and genuine, knowing it to be false, altered, forged, or counterfeited, is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

2. The objectives of sentence review are:

   (i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;
   (ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;
   (iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and
   (iv) to promote the development and application of criteria for sentencing which are both rational and just. *State v. Chaney,* 477 P.2d 441, 443 (Alaska 1970).

3. SLA 1969, ch. 117. A comprehensive study conducted by the Judicial Council played a significant role in the shaping and enactment of this legislation.

4. AS 12.55.120 provides:

   (a) A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defendant on the ground that the sentence is excessive. By appealing a sentence under this section, the defendant waives the right to plead that by a revision of the sentence resulting from the appeal he has been twice placed in jeopardy for the same offense.

   (b) A sentence of imprisonment lawfully imposed by the superior court may be appealed to the supreme court by the state on the ground that the sentence is too lenient; however, when a sentence is appealed by the state and the defendant has not appealed the sentence, the court is not authorized to increase the sentence but may express its approval or disapproval of the sentence and its reasons in a written opinion.

   (c) A sentence appeal under this section does not confer or enlarge the right to bail pending appeal. When the defendant, in the prosecution of a regular appeal, urges excessiveness of the sentence as an additional ground for appeal, the defendant's right to bail pending appeal is governed by the relevant statutes and the rules of the court.

5. Alaska Const. Art. I, § 12.

members of the community who might have tendencies toward criminal conduct similar to those of the offender; (4) Deterrence of the offender himself after release; (5) Community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.[6]

■■ The scope of appellate review requires that this court make its own examination of the record, focusing on the nature of the crime, the defendant's character, and the need for protecting the public. Such an independent examination of the justice of a particular sentence is necessary in order for the review process to function effectively. As we have frequently stated, our standard of review on a sentencing appeal is to determine whether the trial court's imposition of sentence was "clearly mistaken." [7]

With the above criteria in mind, we proceed in our evaluation of the sentencing process in the instant case.

Appellant, a twenty-two year old female Alaskan Native, was born in Hoonah, Alaska, where she lived until her family moved to Juneau when she was eight. Upon completing the eleventh grade, appellant left home and relocated in Anchorage, where she resided in a small apartment with a girlfriend she had known previously in Juneau. Appellant promptly found employment at the Alaska Native Service Hospital and worked there as time keeper for approximately eight months. At some point in 1972 appellant's roommate, who was a prostitute, introduced her to the pro-

fession. Although appellant encountered no difficulties with the law prior to this time, her criminal record reflects six misdemeanor convictions for loitering or soliciting for the purpose of prostitution between January, 1973, and February, 1974. In April of 1974, appellant entered a guilty plea to the charge of petty larceny. Approximately one month later the court placed her on probation for a year.

On February 10, 1975, appellant was apprehended while attempting to negotiate a forged check in the amount of $359.00 with the aid of false identification. Appellant subsequently testified that she had obtained the check in question from a customer whose name she could not remember in exchange for sexual favors. As previously indicated, appellant was convicted upon her plea of guilty to the crime of attempting to pass this forged check; the maximum penalty for this charge is ten years in the state prison.

■ We note at the outset that it is argued that "[c]onsiderable sympathy can be generated for the defendant upon a review of the record." We do not dispute this contention. However, as we recently stated in *Bradley v. State*,[8] "[s]ympathy . . . is not a factor which may take the place of the sentencing criteria we have frequently enunciated . . .." [9]

In arguing that her sentence is excessive, appellant places great emphasis on a similar case in which a defendant was convicted of the same crime. As we stated in *Nicholas:* [10]

While unjustifiable disparities in the sentencing of criminal offenders may be

6. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970); *see also Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970). "To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case." *Id.*

7. *Bradley v. State*, 535 P.2d 1031, 1032 (Alaska 1975); *Nicholas v. State*, 477 P.2d 447, 449 (Alaska 1970); *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

8. 535 P.2d 1031, 1033, n. 6 (Alaska 1975).

9. Of course, this court is properly concerned with the background of each defendant who comes before it in a sentence review case. Such background provides an insight into the character of the defendant and is relevant in determining the likelihood of rehabilitation.

10. *Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970).

a serious problem to many observers of the criminal process, the key word is "unjustifiable", for reasonable disparity is necessary to achieve the purposes of sentencing. Some range of sentencing alternatives must be provided to allow adjustment for the special facts of each crime as well as the record and character of each convicted individual. (citations omitted)

Furthermore, we noted that it is not the purpose of appellate review to enforce uniformity in the sense that all defendants committing the same crime should receive like sentences.[11]

In the case referred to by appellant, the record reflects that although the defendant had a prior criminal record, she was seriously interested in improving her job skills, she had a young child for whom she wished to make a good home, and she ceased to engage in prostitution despite efforts to get her to return. In sentencing the defendant to three years with all but six months suspended, the court observed:

> You've convinced me that at this point in time you do have an honest desire to make a new start so you've got your opportunity.

Based on facts set out hereafter, we find that the defendant possessed a quality not found in appellant: the desire to rehabilitate herself. In light of the fact that this is one of the sentencing criteria set out in *Chaney,* we find that the disparity in sen-

tences imposed by Judge Buckalew is not "unjustifiable."

We take this opportunity to emphasize the importance of innovative sentencing. Since a wide range of sentencing alternatives is available in our criminal justice system, only a lack of imagination by counsel, probation personnel, sentencing judges or concerned citizens can prevent effective utilization of the various options which may be appropriate for a specific defendant.[12] As we noted in *Nicholas v. State*:[13]

> The objectives of sentence review will be achieved only if the sentence that is initially fixed is based on the conscientious effort of the trial judge to arrive at the sentence which best suits the case at hand.

We are not unaware of the fact that the sentence review process has the potential of stifling creative sentencing. This must not happen; appellate review must insure the quality of justice, not diminish it.

Though admitting that "some jail time is appropriate in this case," appellant asserts that her sentence unduly emphasizes the isolation goal of sentencing, resulting in a minimization of the other sentencing objectives noted in *Chaney,* i. e., deterrence, rehabilitation, and reaffirmation of societal norms. As this court previously stated:

> Each of these are valid criteria and the consideration of all of them shows a heightened sense of responsibility on the

---

11. *Id.* at 448–49 states:
    It should be clear at the outset that the standard of review concerning the exercise of sentencing discretion by the trial judge requires of necessity a broad view, for it is not the purpose of appellate review to enforce uniformity or to chill initiative on the part of the trial judge in attempting to arrive at a proper sentence. As explained by Judge Lawrence E. Walsh, an opponent of sentence review, there is a possibility of harm from the very act of review itself in that all judges may attempt to arrive at a happy medium rather than attempting through the personal initiative, experience and training peculiar to trial judges to formulate a program best suited to the in-

dividual in view of his background and the nature of the crime. (Citations omitted)

12. The prosecutor should recognize that the severity of the sentence is not necessarily an indication of the effectiveness or the efficiency of his office. In addition, the prosecutor, no less than the judge, has the duty to resist clamor by the media of public communications. ABA Project on Minimum Standards for Criminal Justice, Standards Relating Sentencing Alternatives and Procedures, Standard 5.3(b) (Approved Draft, 1968).

13. 477 P.2d 447, 449 (Alaska 1970).

part of the superior court judge. It is the judge who must determine the priority and relationship of these objectives in any particular case. [14]

The record from the pre-sentence hearing at which appellant testified reflects that all efforts to secure employment or job training for her while she was on probation proved to be fruitless. Indeed, she testified at the hearing that she was still supporting herself by engaging in prostitution, though she did admit that it was difficult to make ends meet financially. In essence appellant appears to be a person who has a marked proclivity for maintaining a lifestyle which is repugnant to the laws of this state, and who needs substantial supervision to help her develop the attitude and work skills which will prompt her to stay within the confines of the law in the future. Since probation was unsuccessful on a previous occasion, the sentencing judge in the case had no alternative but to incarcerate the defendant in the hope that rehabilitative efforts could be effectuated while she was removed from the criminal milieu. We note that the trial judge recommended work and education releases as part of the judgment in order to break the ties binding her to the prostitution business. It is apparent from the record that the sentencing judge was also concerned about both isolating the offender from society to prevent criminal conduct during the period of confinement, and deterring future criminal conduct on her part. The judge was likewise concerned with deterring other members of the community from engaging in similar conduct by demonstrating the community's condemnation of such behavior. Thus we do not agree that the sentencing judge was overly concerned with the isolation goal of sentencing.

Appellant also contends that the sentencing judge inadequately explained his reasons for imposing an eighteen-month sentence under AS 12.55.075,[15] arguing that the judge was remiss in that the goals of sentencing set forth in *Chaney* and its progeny were not sufficiently discussed. In the recent case of *Bradley v. State*,[16] we reasoned that:

> While the judge did not articulate his reasons for imposing the five-year sentence as fully as might be desired with reference to criteria established in the *Chaney* line of cases, it is apparent that he did give proper consideration to these criteria.

The same may be said for the case at bar, as is evidenced by our previous findings. This statement subsumes that a sentence is not defective under AS 12.55.075 if all the *Chaney* goals are not discussed on the record. We note that AS 12.55.075(a)(2) requires that the sentencing court, at the time of imposing sentence, state "the reasons for selecting the particular sentence imposed." However, this provision does not require a recitation of each of the *Chaney* criteria; thus appellant's argument

14. *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973).

15. AS 12.55.075 provides:
(a) In addition to any other requirement of law relating to the imposition of sentences, at the time of imposing sentence for the conviction of a felony, the court shall prepare a sentencing report as part of the record, to include the following:
(1) a verbatim record of any sentencing hearing, including statements made by witnesses, the prosecuting attorney, the defense attorney, and the defendant;
(2) the reasons for selecting the particular sentence imposed;

(3) specific findings on all material issues of fact and on all factual questions required as a prerequisite to the selection of the sentence imposed;
(4) a precise statement of the terms of the sentence imposed, and the purpose the sentence is intended to serve.
(b) The sentencing report required under (a) of this section shall be furnished to the Department of Law, the defendant, the division of corrections and the Alaska Parole Board, Department of Health and Social Services.

16. 535 P.2d 1031, 1033 (Alaska 1975).

that we adopt such a position must be rejected. We find that the sentencing judge's rather terse remarks satisfied AS 12.55.075(a)(2). However, in light of the fact that one of the objectives of sentence review often articulated by this court is to "promote respect for the law by . . . increasing the fairness of the sentencing process," we take this opportunity to stress the importance of a thorough explanation for the sentence imposed by the trial judge. In addition to the aid that a statement of reasons by the sentencing judge will give to this court, there are numerous independent reasons for requiring such a statement. In the first place, "a good sentence is one which can be reasonably explained." [17] An attempt by the sentencing judge to articulate his reasons for a sentence in each case should in itself contribute significantly to the rationality of sentences. A second reason for requiring such a statement of reasons is that it can have great value to corrections authorities if the sentence results in a commitment, for the sentencing remarks are often transcribed and made available to these authorities. Thirdly, a statement by the sentencing judge explaining to the defendant the reasons for the commitment can in many cases have therapeutic value. Specifically, it would help the defendant and the public understand why a particular sentence was imposed; only through this understanding is there hope for acceptance. An acceptance of the sentence by the defendant without bitterness is an important ingredient in rehabilitation, and acceptance by the public will foster confidence in the criminal justice system.

While the reasons given are lacking the detail which the court would desire, we are not convinced that the trial court was clearly mistaken in imposing an eighteen-month sentence.[18] Therefore, the sentence imposed by the superior court is affirmed.

17. Youngdahl, Remarks Opening the Sentence Institute Program, Denver, Colorado, 35 F.R.D. 387, 388 (1964).

18. At the sentencing hearing the District Attorney asked appellant about her relationship with a known heroin user. While

we find this line of questioning was inappropriate in view of the fact that there was no evidence that appellant was involved with drugs, the error does not merit reversal in the instant case, as a review of the entire record disclosed it was harmless.