Michael Shane **CLEARY**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 2623.

Supreme Court of Alaska.

April 12, 1976.

F. P. Pettyjohn of Pettyjohn & Pestinger, Anchorage, for appellant.

Avrum M. Gross, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

ERWIN, Justice.

In March of 1975, appellant Michael Cleary pleaded guilty to armed bank robbery in the United States District Court for the District of Alaska. He was sentenced to a term of five years. On May 16, 1975, appellant was convicted in superior court upon his plea of guilty to five counts of robbery[1] contained in two indictments. The trial judge imposed two consecutive ten-year sentences, to be served following his five-year federal sentence. Mr. Cleary has appealed to this court, contending that the superior court sentence he received is excessive.[2]

As previously noted by this court,[3] sentence review must be carried out with a view to effectuate the purposes of the Alaska Constitution[4] and the sentence review statute.[5] In implementing these provisions, the court has recognized the following goals of criminal sanctions: (1) rehabilitation of the convicted offender into a non-criminal member of society; (2) isolation of the offender from society to prevent criminal conduct during the period of confinement; (3) deterrence of the other members of the community who might have tendencies toward criminal conduct similar to those of the offender; (4) deterrence of the offender himself after release; (5) community condemnation of the individual offender, or in other words, the affirmation of societal norms for the purpose of maintaining respect for the norms themselves.[6]

1. AS 11.15.240 provides:

 A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

2. The objectives of sentence review are:

 (i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

 (ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

 (iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

 (iv) to promote the development and application of criteria for sentencing which are both rational and just. *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970). (Footnote omitted)

3. *Perrin v. State*, 543 P.2d 413 (Alaska 1975).

4. Alaska Const. Art. I, § 12, provides, "Penal administration shall be based on the principle of reformation and upon the need for protecting the public."

5. AS 12.55.120.

6. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). "To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives

Although the primary responsibility for sentencing rests with the trial court, the scope of appellate review requires that we make our own examination of the record, focusing on the need for protecting the public, the nature of the crime, and the defendant's character.[7] This independent examination of the justice of a particular sentence is necessary if the review process is to function effectively. Our standard of review on a sentencing appeal is to determine whether the trial court's imposition of sentence was "clearly mistaken."[8]

With the foregoing in mind, we now turn to the facts of the case at bar. Mr. Cleary, who was twenty-nine years old at the time of his sentencing, moved to Alaska with his family when he was eighteen. During 1964 and 1965 Cleary attended school in Anchorage, pursuing a certificate in carpentry and piledriving. At age 20 he was a member of both unions. In 1968 Cleary married and became the stepfather of two young boys, ages seven and eight.

During 1973 Cleary became involved with drugs and eventually started using heroin. In the fall of that year he was arrested for selling marijuana. At that point Cleary's wife, concerned with his drug use, left with her two children. Desirous of getting away from the drug scene, Cleary eventually took a job on the North Slope. In early December, 1974, while in Anchorage on vacation, he broke his arm and was unable to return to his job. Cleary then began using large amounts of heroin. As the holiday season approached, he became increasingly depressed and asked his stepfather and mother, with whom he was living, to take him to the Alaska Psychiatric Institute. Apparently the institute was unable to help, and Cleary was referred to the Borough's Central Intake drug team. Cleary submits that although they promised to call him back when he asked to see a psychiatrist, they failed to do so.

On January 2, 1975, Cleary, his drug habit costing approximately two thousand dollars a week, robbed a bank. In a two-week period begining January 9th, he committed five more robberies.

Prior to sentencing by the state court, Cleary received a five-year sentence from the United States District Court. After negotiations with Cleary's lawyer, the district attorney proposed to the Superior Court that he plead guilty to five counts of robbery, in exchange for the following sentence recommendation: 7½ years on each count, all to run concurrently, and also to run concurrently with the five-year sentence imposed by the United States District Court; in addition, 2½ of the 7½ years would be suspended. The sentencing judge refused to accept this sentence, which in essence was a term of five years. Thus, when Cleary pleaded guilty to the aforementioned crimes, he subjected himself to an open sentencing procedure.

After a lengthy hearing, the trial judge sentenced Cleary to two consecutive terms of ten years incarceration, to be served following his five-year federal sentence. Hence, he will serve a total of twenty-five years if the sanction imposed is affirmed by this court.

Since the legislature enacted the sentence appeal statute approximately six years ago, we have been presented with cases in which the sentence was twenty years or more only eleven times. In two cases we remanded for psychological testing.[9] In another, we remanded upon finding that the sentence violated the double jeopardy

in any particular case." *Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970).

7. *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970).

8. *Nicholas v. State*, 477 P.2d 447, 449 (Alaska 1970). In subsequent cases a new standard, the "zone of reasonableness," was added.

In *McClain v. State*, 519 P.2d 811 (Alaska 1974), this court analyzed both formulations and adopted the "clearly mistaken" standard exclusively.

9. *Robinson v. State*, 484 P.2d 686 (Alaska 1971). *Davenport v. State*, 543 P.2d 1204 (Alaska 1975).

provision of the State Constitution.[10] The remaining eight cases, in which the sentences were affirmed, all involved either death or physical injury to an innocent victim.[11] As we noted in *Donlun v. State:*[12]

> The American Bar Association [13] has stated that in the vast majority of cases prison sentences are significantly higher than are needed to adequately protect the interests of the public and that, except for cases involving *particularly* serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not to exceed 5 years. We agree.

 This court, without question, considers robbery to be "among the most serious crimes." [14] We note that Cleary was involved in six robberies; furthermore, he used a handgun in each instance. As observed by a recent article on sentence review in Alaska, "the use of weapons aggravates the nature of the crime." [15] Although nobody was injured by Cleary's actions, we think it is "appropriate to take into consideration the potential injury to the victim in arriving at a proper sentence." [16]

Conduct such as that engaged in by Cleary calls for lengthy incarceration. With reference to the criteria enunciated in *Chaney,* a substantial sanction is necessary to express the community's condemnation of such behavior so as to deter other members of the community from engaging in similar conduct. In addition, a long period of imprisonment unequivocally brings home to Cleary the seriousness of his dangerously unlawful conduct while preventing him from engaging in criminal conduct during the period of confinement.

Under our system most prisoners will be released someday; very few are held until senility or death itself has stilled criminal instincts. If we release persons who have the capacity for further crime, only temporary safety has been afforded. If nothing more than selfish interest compels us, then the principle of "reformation" enunciated in our state constitution is worth the effort, for when it works, it reduces crime. The end sought by rehabilitation is a stable individual returned to community life, capable of constructive participation and incapable of committing crime. Of course, we have recognized in the past that some people are, unfortunately, not amenable to treatment.[17] In such a case the rehabilitation goal of sentencing is properly given a low priority when the judge passes sentence. For most offenders, however, the direction of the correctional process must be back toward the community. With this in mind, we turn to a careful examination of Mr. Cleary's character, which is interrelated with his rehabilitation potential.

 The overwhelming impression derived from the record is that but for his addiction to heroin, Mr. Cleary would never have committed the crimes he has

---

10. *Thessen v. State,* 508 P.2d 1192 (Alaska 1973).

11. *Gray v. State,* 487 P.2d 680 (Alaska 1971) (first degree murder) ; *Condon v. State,* 498 P.2d 276 (Alaska 1972) (second degree murder) ; *Asitonia v. State,* 508 P.2d 1023 (Alaska 1973) (second degree murder) ; *Durier v. State,* 511 P.2d 1058 (Alaska 1973) (manslaughter) ; *Hofhines v. State,* 511 P.2d 1292 (Alaska 1973) (first degree murder) ; *Torres v. State,* 521 P.2d 386 (Alaska 1974) (rape) ; *McCracken v. State,* 521 P.2d 499 (Alaska 1974) (shooting with intent to kill) ; *Burleson v. State,* 543 P.2d 1195 (1975) (mayhem).

12. *Donlun v. State,* 527 P.2d 472, 475 (Alaska 1974).

13. A.B.A. Standards, Sentencing Alternatives and Procedures § 2.1, at 13–14 (Approved Draft 1968).

14. *Chaney v. State,* 477 P.2d 441, 446 (Alaska 1970).

15. Erwin, Five Years of Sentence Review in Alaska, 5 U.C.L.A.–Alaska L.Rev. 1, 13 (1975).

16. *Id.*

17. *Kriska v. State,* 501 P.2d 159 (Alaska 1972).

admitted to.[18] Before becoming involved with drugs, Cleary was a responsible young man, highly respected by his family and friends. In addition, his former wife remembers him as a trustworthy companion and a "good father" of his two stepsons. Fellow union members considered him a very hard worker, as well as a reliable foreman when he served in that capacity. Prior to 1973, when Cleary was convicted for selling marijuana, he had never been involved in any serious trouble with the law.

In 1974 Cleary became a heavy user of heroin; no longer was he concerned with his family, his work, or his reputation. During early 1975 a criminal spree spanning three short weeks resulted in the commission of six serious crimes—all to support a drug habit costing as much as $2,000 per week. A psychiatric report submitted to the court indicates that "it is highly doubtful that he could conform his behavior to the expectations of the law" during this period.

In reviewing the record we note that Cleary has accepted responsibility for his acts and expressed considerable remorse for jeopardizing the safety of his robbery victims. In addition, Cleary requested that his federal sentence be served in an institution where intense drug programs are available for addicts. In a statement to the court, Cleary remarked that with "help my heroin addiction can be arrested, and ended. And behind that I think I could come out of jail and be a productive citizen." We consider it noteworthy, then, that the assistant business agent for the piledriver's union, who had known Cleary for ten years, testified that upon release from prison, "the union will stand by him all the way." The record also reflects that his family has shown considerable interest in his future throughout the proceedings. We think these factors are most important in determining whether Cleary may be susceptible of rehabilitation.

The federal court, recognizing that drug addiction is as much a health problem as a criminal one, sentenced Cleary to five years with the recommendation that he be incarcerated in an institution where "psychiatric evaluation and treatment to rehabilitate him for his addiction to heroin" are available. If the federal authorities are successful in treating Mr. Cleary, his drug problem may well be cured before he enters this state's correctional facilities. Nevertheless, we find the superior court properly rejected the district attorney's recommended sentence, which would have enabled Cleary to return to the community upon serving his federal sentence. In order to effectuate the goals enunciated in the State constitution, we think it was appropriate for the superior court to impose a sentence which would run consecutively to the federal sentence. It does not appear to us, however, that the principle of public protection requires Cleary's potential incarceration for an additional twenty years. In this regard we refer to the American Bar Association's position with respect to consecutive sentences:

> Imposition of a consecutive sentence should require the affirmative action of the sentencing court. The court should be authorized to impose a consecutive sentence only after a finding that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant.[19]

Prisons create the starkest possible segregation from the community—distant, isolated and full of subcultures strange to normal living. If the present sentence were to remain unaltered, the eventual reintegration of Cleary into the community would be most difficult. The twin goals

---

18. However, "[w]e are not persuaded that the court should apply different standards in sentencing heroin addicts." *McClain v. State*, 519 P.2d 811, 813 (Alaska 1974).

19. A.B.A. Standards, Sentencing Alternatives and Procedures § 3.4, at 24 (Approved Draft 1968).

of penal administration in Alaska, reformation of the offender and the need to protect the public, will best be met in this case if the court revises its sentence.

This case is remanded to the superior court with instructions to vacate the sentence imposed and to resentence Cleary in conformity with this opinion.

BURKE, Justice (dissenting).

I respectfully dissent. Admittedly, the superior court imposed an extremely heavy sentence in this case. However, I am unable to agree that in doing so the court erred.

The majority's conclusion that the sentence was excessive appears to be based largely on the fact that until Cleary became addicted to heroin he was a respectable citizen, and the probability that but for his addiction he would not have committed the robberies for which he was convicted. At the same time the majority concedes that a lengthy period of incarceration was called for, recognizing that we have long considered robbery to be among the most serious crimes, particularly where a weapon is used, and that it is appropriate to take into consideration the potential injury to the victim in arriving at a proper sentence.

While it appears fairly clear that the defendant's difficulties are directly attributable to his addiction, that fact, as sad as it is, merely adds to the difficulty of achieving any genuine rehabilitation. The record in this case makes it abundantly clear that the odds in favor of meaningful behavior modification are poor; that a long and difficult road lies ahead before it can be safely said that Cleary no longer poses a threat to other persons in the community. As Cleary himself stated at the time of sentencing,

> I'm really sorry I pointed that gun at you people. I . . . I really am. But I would have pointed it at the Pope. What the hell can I say? I know . . . I know from where I'm at if I go to a penitentiary now, it's gonna be the same

thing when I get out if . . . people don't just kick a heroin habit.

Of major significance is Cleary's record of progress while on probation following his conviction on a federal drug charge in 1974. According to the presentence report in the instant case,

> [T]he defendant is a drug addict and apparently has been heavily addicted for some time. Unfortunately, while on federal probation the defendant did not profit from the system and did not take advantage of any drug treatment oriented programs. According to the defendant's Federal Probation Officer, Mr. Runestead, the defendant's probation period was less than satisfactory. His reporting habits were less than desirable, the defendant failed to pay any money toward the $1500 fine imposed by the Federal Court on 1–7–74 [over and above a one year sentence suspended after service of 90 days], and of course it all ended with a series of Robberys [sic].

In addition to the foregoing, we find the following comments in the psychological and psychiatric reports made to the trial court. Dr. Jon F. Burke, a clinical psychologist, after suggesting the possibility of providing the defendant with some form of occupational training, as a consideration in sentencing, said:

> It may be that with some kinds of success in this area that many of the underlying problems may eventually be resolvable, *although this certainly would be a long and arduous process.* (emphasis added)

Dr. Aron S. Wolf, a psychiatrist, stated:

> Diagnostically, this patient does have a schizoid personality with an overlying depression. He obviously has a severe problem with easy and multiple addictions.

> The patient is indeed competent to stand trial on all of his charges. In relation to his competency he does know right from wrong, but it [sic] his habit was as big as he states and with his

level of depression it is probably [sic] that he was driven by his addiction and it is highly doubtful that he could conform his behavior to the expectations of the law.

In terms of disposition, I feel that this patient will need specific inpatient structured help with his addiction and with his underlying depression. This could be done within the federal penitentiary system, through the NARA program, or in a therapeutic community such as Family House or Synanon. Such treatment could occur throughout this period of incarceration, but should at least be stipulated to happen for the last two years of such incarceration.

*In light of his addiction patterns, I feel he needs a very hard inpatient approach to relearning life patterns, or he will find it too easy to avoid his depressive thoughts through the use of heroin.* (emphasis added)

In selecting an appropriate sentence the trial court is required to strike a balance between the defendant's need for rehabilitation and the need to protect the public. Here, the sentencing judge obviously felt that a long period of incarceration was required if the goals of sentencing were to be achieved. Given the record in this case, I fail to see how this court can say that he was clearly mistaken.

In conclusion, I am disturbed by what I consider to be a failure on the part of the majority to pay proper heed to our now well-established standard of review. This court is entitled to interfere in the sentencing process only when the court authorized by law to impose the sentence is shown to be *clearly mistaken*. The majority opinion, while purporting to recognize that principle, indicates only that the majority has concluded that the goals of sentencing "will be best met in this case" if a lesser sentence is imposed. I am not aware of any requirement that a sentencing judge select the best possible sentence, or even that he select the better of two alternatives. The question is not whether the sentencing judge could have devised a more appropriate sentence, but whether he was clearly mistaken. I am not convinced that he was in this case.

I would affirm.