Penny Lee ANDREWS, Appellant,

v.

STATE of Alaska, Appellee.

No. 2519.

Supreme Court of Alaska.

July 14, 1976.

Mark Weaver, Asst. Public Defender and Brian Shortell, Public Defender, Anchorage, for appellant.

Stephen G. Dunning and Ivan Lawner, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

Appellant Penny Lee Andrews, a 24-year-old bookkeeper, entered a plea of guilty to an indictment charging her with embezzling $28,301.51 from her employer between August 23, 1973, and October 31,

1973, in violation of AS 11.20.280.[1] Andrews was hereafter sentenced to serve a term of 10 years' imprisonment with 5 years suspended. Andrews now appeals this sentence asserting that under the circumstances the superior court's sentence is excessive.

Andrews readily admitted to members of the Anchorage Police Department, upon her arrest, that she had in fact embezzled a large amount of money, and that all of the funds so obtained, other than approximately $2,000 lost in an unspecified investment, had been expended to support her heroin addiction, the cost of which ran as high as $200 a day.[2]

Andrews' prior record shows 9 minor traffic violations and one misdemeanor conviction for frequenting an illegal establishment. The presentence report further indicates that Andrews has significant emotional problems which "have led to self-defeating and anti-social behavior." She had a fairly stable home life until her father's drinking problems led to the separation of her parents when she was 8 years old. Other possible sources of emotional problems include the subsequent death of her father, transient associations with the men with whom she had lived, and a general alienation from her mother and sisters. The presentence report indicates Andrews was evasive and untruthful in talking to her probation officer.[3] The presentence report suggests that Andrews had no friends or relatives upon whom she can rely for emotional support and that her anti-social behavior is not likely to change unless she is able to obtain psychotherapy. The author of the report evaluated Andrews as a poor probation risk, suggested that probation be denied, and further recommended that Andrews be allowed to continue with a methadone program and related therapy.[4]

Before analyzing the superior court's sentence and our decisional law, governing the subject of sentence appeals, in light of Andrews' contentions in this appeal, a brief review of some of the negative and positive factors in Andrews' life is appropriate. On the positive side, Andrews had never been convicted of a serious crime; she had compiled what can fairly be characterized as a negligible record. She is young and has voluntarily sought treatment for her drug problem in the past. The apparent source of her drug problem and

---

1. AS 11.20.280 provides:

   *Embezzlement by employee or servant.* An officer, agent, clerk, employee, or servant who embezzles or fraudulently converts to his own use, or takes or secretes [sic] with intent to embezzle or fraudulently convert to his own use, money, property, or thing of another which may be the subject of larceny, and which has come into his possession or is under his care by virtue of his employment is guilty of embezzlement. If the property embezzled exceeds $100 in value, a person guilty of embezzlement is punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. If the property embezzled does not exceed the value of $100, a person guilty of embezzlement is punishable by imprisonment in a jail for not less than one month nor more than one year, or by a fine of not less than $25 nor more than $100.

2. The state points out that even at $200 daily and including the $2,000 investment loss, some $12,900 was unaccounted for under Andrews' version of the uses to which she put the embezzled monies.

3. For example, Andrews told the officer she was born in California and lived in California and Oregon until moving to Alaska in 1964. However, Andrews' sister informed the probation officer that Andrews was born and lived in Canada until 1964 and is, in fact, a Canadian citizen living in Alaska on a permanent visa. Further, Andrews informed the probation officer that she was presently employed by the Anchorage Daily News. The officer determined that she had worked at the News for only three days and had been terminated prior to the interview because she had used a delivery van for personal business. Andrews' counsel asserted at the pre-sentence hearing that her termination occurred after the interview.

4. Andrews had attended the Langdon Methadone Program between August 1973 and November 1973 when she was terminated due to lack of progress. We note Andrews embezzled the money to meet her habit from late August 1973 to late October 1973.

her consequent embezzlement is emotional problems which are seemingly susceptible to treatment. On the negative side, she lived in a very unsupportive environment, has had difficulty holding employment for any length of time, is addicted to heroin (having failed to successfully complete one methadone program), has lied in a serious situation (to her probation officer), and has systematically, over a two-month period, embezzled a large amount of money from an employer.

Andrews' counsel initially argues that she is not the "worst type of offender" and thus ought not to have been sentenced to the statutory maximum of 10 years. In *Spearman v. State,* 543 P.2d 202 (Alaska 1975), we stated, by way of dictum, that a sentence of 10 years, the maximum possible under the statute there involved, with 3 years suspended was not a maximum sentence.[5] The state thus contends that the relevant sentence is 5 years, the maximum time Andrews will remain incarcerated, assuming she commits no violations during the remaining 5 years' period of suspension. Regardless of whether the sentence is deemed a maximum sentence for purposes of carrying out our appellate review, we are obligated to consider the entire sentence which the superior court imposed. That is, in determining whether a given sentence is excessive or overly lenient, we will consider the total sentence entered including any period of suspension or deferred imposition.

Among the objectives of sentence review are the following:[6]

(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

(iv) to promote the development and application of criteria for sentencing which are both rational and just.

From a reading of the briefs and record in the case at bar, it appears that the first and third objectives of sentence review are at issue.[7] Thus, our task in the instant appeal is to determine whether the

---

5. 543 P.2d at 205. We went on to say in *Spearman:*

Further, we note that the statement in *Waters* to the effect that maximum sentences should usually be given to the worse offender " . . . does not preclude the sentencing judge from considering a variety of factors which make a defendant a 'particularly difficult type of offender.' " Here, assuming arguendo the applicability of *Waters,* in light of Spearman's past conviction of aggravated assault and robbery and his consequent undesirable military discharge, the presentence report's recommendation, and the actual facts surrounding Spearman's attempt to blow up a portion of Papa Joe's during a time when numerous persons were on the premises, we are of the belief that compelling evidence is present in this record which would justify characterization of Spearman as the "worst type of offender."

6. *State v. Chaney,* 477 P.2d 441, 443 (Alaska 1970).

7. These objectives were elaborated on in *Chaney.* Thus, in reference to Article I, section 12 of the Alaska Constitution, we said that: (477 P.2d at 444)

Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

In *Chaney's* companion case, *Nicholas v. State,* 477 P.2d 447, 448 (Alaska 1970), the court stated:

To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case.

superior court's 10-year sentence with 5 suspended was excessive in length under the circumstances, and further whether or not the sentencing proceedings were fair and comported with applicable procedural safeguards. The scope of this court's sentence review authority requires that we make our own examination of the record with particular emphasis on the nature of the crime, the defendant's character, and the need for protection of the public. The controlling standard of review in sentence appeal matters is whether the trial court's sentence was "clearly mistaken." [8]

■ Our discussion of the superior court's sentence in the case at bar begins with the sentencing judge's comments expressing his reasons for selection of the sentence in question. The totality of the sentencing court's rationale for the sanctions it imposed is expressed in the following portion of the record of the sentencing proceedings:

THE COURT: All right, Mrs. Andrews, will you—Miss Andrews, will you stand, please. Well, unfortunately I'm not a social worker. And I've read the probation report and I'm concerned about your welfare, of course, and I look at the statute, embezzlement from an employee, and I get some direction from the legislature of the penalty. I don't know whether you know it. I'm sure your counsel has told you. If the embezzlement is over $100.00, the penalty or suggested penalty for the offense recommended to the court by the legislature is not less than one year or more than 10. And of course if it's less than $100.00, why, the penalty is less than that. I appreciate you're 25 years of age and I read this probation report and I'm not very encouraged by it and at the same time society is concerned with whoever this gentleman is, your employer, who ap-

parently was kind to you, had complete trust in you and I don't know what kind of a knapsack he's going to have to pick up and carry. He's got to absorb $28,-000.00 loss. I don't know whether he had any children or not and I don't know whether he's got any children in school. If he does, he might be taking them out of school. But you've kind of reached the end of your road. I'm convinced that you're not really at this time—I don't think it would be wise for this court to put you on probation and I feel compelled to follow the recommendation of Mr. Mackey. I'm going to sentence you to 10 years in jail and suspend 5 of them. And I think, considering all the circumstances, that's probably a lenient sentence in this case. You realize you have a right to appeal the sentence if you think it's too harsh. Your attorney certainly advised you of your rights so far as appealing this case.[9]

In the recent case of *Perrin v. State,* 543 P.2d 413, 418 (Alaska 1975), we stressed the importance of a thorough explanation for the sentence imposed by the trial judge. There we said in part:

In addition to the aid that a statement of the reasons by the sentencing judge will give to this court, there are numerous independent reasons for requiring such a statement. In the first place, "a good sentence is one which can be reasonably explained." An attempt by the sentencing judge to articulate his reasons for a sentence in each case should in itself contribute significantly to the rationality of sentences. A second reason for requiring such a statement of reasons is that it can have great value to corrections authorities if the sentence results in a commitment, for the sentencing remarks are often transcribed and made available to these authorities. Thirdly, a

8. *Bailey v. State,* 548 P.2d 373 (Alaska, 1976); *Bradley v. State,* 535 P.2d 1031, 1032 (Alaska 1975); *Smith v. State,* 531 P.2d 1273, 1276 (Alaska 1975); *Galaktionoff v. State,* 486 P.2d 919, 922 (Alaska 1971).

9. Although requested to by Andrews' counsel at the sentencing hearing, the superior court declined to make any recommendation regarding a work furlough or an educational release during confinement.

statement by the sentencing judge explaining to the defendant the reasons for the commitment can in many cases have therapeutic value. Specifically, it would help the defendant and the public understand why a particular sentence was imposed; only through this understanding is there hope for acceptance. An acceptance of the sentence by the defendant without bitterness is an important ingredient in rehabilitation, and acceptance by the public will foster confidence in the criminal justice system.[10] (footnote omitted)

Our review of the record has led us to the conclusion that the sentencing court's stated reasons for imposing the sentence it did upon Andrews are lacking in the requisite degree of completeness which is required for effective appellate review of sentences. In short, in light of the particular sentence imposed upon a youthful first felony offender [11] who committed a crime which did not involve any physical danger to other persons, we fail to discern the basis for the superior court's sentence.

Study of the sentencing court's articulated reasons for the sentence it meted out discloses that only passing reference was made to Andrews' lack of potential for rehabilitation [12] as well as the need for reaffirmation of societal norms.[13] Thus, what is lacking here is the "thorough [sentence] explanation" called for by *Perrin*. Absent such an explanation we are unable to advance the objectives of sentence review which were articulated in *Chaney*.

Furthermore, we note that the sentencing took place without input from any psychologist or psychiatrist. Yet, in our view, the facts of this case call for a psychological evaluation since we are concerned with a young potentially reformable offender. If the sources of appellant's antisocial behavior are specific treatable psychological problems, it stands to reason that diagnosis and treatment ought to be considered if a just decision is to be reached. Thus, on remand the superior court should have the benefit of psychological testing and psychiatric evaluation.[14] In this regard our recent opinion in *Tommy v. State,* 551 P.2d 179 (Alaska, 1976), is relevant. There we concluded that the sentencing judge should have had the benefit of a current psychological evaluation, stating in part:

> We have previously indicated the importance of such evaluations, particularly before sentencing youthful offenders to lengthy periods of incarceration.

---

10. For sentencing after August of 1974, compare AS 12.55.075(a)(2). In both the *Perrin* case and *Bradley v. State,* 535 P.2d 1031, 1033 (Alaska 1975), we concluded that the sentencing court's stated reasons satisfied AS 12.55.075(a)(2) and *Chaney*. In *Perrin* we explicitly held that AS 12.55.075 " . . . does not require a recitation of each of the *Chaney* criteria . . . ."

11. While Andrews is not incarcerated during the last 5 years of her sentence, as a result of the sentence being suspended, she may be placed on probation. AS 12.55.080; AS 12.55.085. While on probation she may be rearrested without warrant, AS 12.55.085(b), and her freedom may be revoked for conduct not constituting a crime. *Snyder v. State,* 496 P.2d 62 (Alaska 1962). The "good cause" necessary for revocation of probation may be simply violation of the terms and conditions of probation. *Id.*; *see* AS 12.55.110. Thus, during this time the testimony of Andrews' freedom is significantly less than that of a law-abiding citizen.

12. As noted previously, the sentencing court was " . . . concerned about your welfare . . . . I appreciate you're 25 years of age and I read the probation report and I'm not very encouraged by it . . . . . "

13. Here the reference is to the legislatively established range of penalties. The sentencing judge asserted that " . . . society is concerned about whoever this gentleman is, your employer . . . . "

14. *Compare* ABA Standards Relating to Sentencing Alternatives and Procedures (Approved Draft 1968) § 4.6. *See Hawthorne v. State,* 501 P.2d 155, 158 (Alaska 1972); *see also Davenport v. State,* 543 P.2d 1204, 1211 (Alaska 1975); *Robinson v. State,* 484 P.2d 686, 690 (Alaska 1971); *but cf. Newsom v. State,* 512 P.2d 557, 562–63 (Alaska 1973); *see also* Model Penal Code § 7.07(3) and (4).

We therefore conclude that the matter should be remanded to the superior court for such further sentencing proceedings as are considered appropriate in conformity with this opinion.

Remanded.