**Werner SCHUSTER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2911.**

Supreme Court of Alaska.

Aug. 16, 1976.

David B. Loutrel, of Croft, Thurlow & Loutrel, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

PER CURIAM.

In this appeal we are asked to determine whether the district court was clearly mistaken in imposing a sentence of 360 days imprisonment with 270 days suspended and a fine of $1,000.[1] The trial court entered this sentence after appellant Werner Schuster entered pleas of guilty to the separate charges of killing a cow moose out of season and unlawfully selling moose meat.

The facts disclose that during the late night hours of December 2, 1974, a citizen contacted the military police at Fort Richardson regarding spotlighting activities on the military reservation. An investigation by the military police led them to a locked vehicle on a remote road and a dead moose, recently killed, a short distance away. At that point the policemen sought assistance from State Fish and Wildlife Protection Officers.

When Fish and Wildlife Officers arrived at the scene, it was snowing quite heavily and, being the winter season, a few feet of snow had already accumulated on the ground. Evidence at the scene indicated that someone taking a moose had been interrupted in the process. Specifically, fresh human tracks led from the road on which the locked vehicle was parked to a recently killed moose, and then into the wilderness.

A Fish and Wildlife Officer, after following the human tracks for several miles, came upon two men, later identified as Werner Schuster and his son Fred, and placed them under arrest.[2] The Schusters had in their possession a number of knives and a hand axe covered with blood and moose hair. A search warrant for the

1. Appellant was charged with violating AS 16.05.920(a), unlawful sale of moose, and in a separate complaint, violation of 5 ACC 81.-320(a), taking a moose out of season. He was sentenced to serve 180 days, with 135 days suspended, and to pay a fine of $500.00, on each charge. The sentences were made to run consecutively.

2. The arrest was authorized by AS 16.05.160.

locked vehicle was subsequently issued and a number of items were seized: a 30.06 rifle, rifle cartridges, two expended shell casings, an axe with blood and moose hair attached, and a 12-volt spotlight.[3]

Also, during the day of December 2, 1974, officers of the Fish and Wildlife Protection Unit of the Alaska State Troopers received information that a moose had been sold the previous day to an Anchorage man. An investigation conducted during the ensuing weeks revealed that the man had purchased the moose for $150 from Mr. Schuster. When delivered by Schuster, the moose was quartered but otherwise uncut. As a result of this transaction the appellant was subsequently charged with the unlawful sale of moose meat.

As noted, Schuster was convicted upon his plea of guilty to both charges; he thereafter appealed to the superior court, contending that the sentence he received was excessive. The superior court affirmed the sentence, and this appeal followed.

> This court has previously observed that:

> The scope of appellate review requires that this court make its own examination of the record, focusing on the nature of the crime, the defendant's character, and the need for protecting the public. Such an independent examination of the justice of a particular sentence is necessary in order for the review process to function effectively. As we have frequently stated, our standard of review on a sentencing appeal is to determine whether the trial court's imposition of sentence was "clearly mistaken."[4]

With the foregoing in mind, we proceed in our evaluation of the sentencing process in the case at bar.

Schuster, 44, has lived in Alaska for most of the past seventeen years. He is the father of three children, a son, Fred, with whom he was arrested, and two daughters who live with his former wife. The presentence report reflects that he has earned his living in a variety of ways, including logging, carpentry, deep sea diving, book sales, and various small business enterprises. At the time of sentencing he was employed as a carpenter in the construction of a gold dredge at King's Bay. Schuster is considered as being a very hard working individual by those with whom he associates. While he does have a prior record, the offenses occurred more than ten years ago, and none involved fish and game violations.

In explanation of the present offenses Schuster stated that the moose he sold was legally taken by a casual friend known only as Bob. According to Schuster, Bob shot the moose for the antlers and gave the meat to him. Schuster maintains that he was short on money at the time and consequently decided to sell the moose meat. As to the poaching charge, he informed the probation officer that he intended to use the moose for personal consumption because he was having financial problems.

In fashioning the sentence the trial court observed that

> . . . I conclude that he's a hard working person, that he's rather expedi —I agree with the probation officer's analysis—expedient, that he ·considered what he was doing a form of employment. I don't believe the defendant's statement in the [presentence] report one iota, that is, I don't believe that the first moose was legally taken and that he intended to use the second moose for his personal consumption. The evidence just doesn't lie that way. And I don't

---

3. A survey of the area conducted four days after Schuster's arrest resulted in the discovery of another dead moose. The condition of the moose and certain physical evidence at the scene indicated that the two moose had been killed at the same time.

4. *Perrin v. State*, 543 P.2d 413, 415 (Alaska 1975) (footnotes omitted).

believe the statement he made to the probation officer. The factors I consider in sentencing or I'm supposed to consider are protection of the public, rehabilitation of the defendant, and general deterrence to the defendant and other members of the public. My conclusion in this case is that protection of the public in the sense of isolation is not much of a factor in this case. Maybe protection of the moose are. The rehabilitation isn't much of a factor in this case either, because the defendant is not young like—I mean some of the cases we get, we try to rehabilitate a young person or something. I don't think that's the issue here at all. I think the issue is enforcing the community norms. Are people going to be allowed to poach moose and sell them or not? And what are we going to do if they're caught doing that? That's my analysis. The general principle of sentencing that I'm trying to—that I'm going on is deterrence to other members of the public and possibly the defendant from the same kind of activity.

We note from the foregoing that the trial court considered the objectives of criminal sanctions that we enunciated in *Chaney*[5] and its progeny. While the judge relied most heavily on community condemnation and deterrence, this was entirely proper under the circumstances of this case, for as we have stated in the past:

To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case.[6]

Having in mind the nature of the offenses, the character of the appellant, and the protection of the public interest,[7] we are unable to say that the district court was clearly mistaken in imposing the sentence it did.

Schuster also contends that there is no "statute or regulation that imposes any criminal sanctions for the taking of game outside seasons set up by the Alaska game regulations," and thus the sentence imposed was excessive as a matter of law. This assertion appears to be grounded in the assumption that the judge, in fashioning the sentence, relied on AS 16.05.430, which the presentence report erroneously recited as the penalty statute for the taking of game during closed seasons. We note, however, that the record is devoid of any indication that the trial court relied on AS 16.05.430 in determining the appropriate sentence.

Schuster was charged with violating AS 16.05.920(a), and in a separate complaint, violation of 5 ACC 81.320(a). Both the statute and the regulation are governed by AS 16.05.900(a) as to the penalty which the trial judge may impose. AS 16.05.900 provides in pertinent part:

*Penalty for Violations.* (a) A person who violates §§ 830, 870–895, or 920 of this chapter or any rule or regulation promulgated under this chapter is guilty of a misdemeanor and, upon conviction, is punishable by a fine of not more than $1,000 or by imprisonment for not more than six months, or by both. . . .

Since the statute was within the statutory maximum, it was within the legal authority of the district court to impose.

The sentence is affirmed.

5. In *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), we stated that:

Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a non-criminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

6. *Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970).

7. In this regard we note that Corporal Winn, a Fish and Wildlife Officer, testified at the sentencing hearing that 28 moose were poached on Fort Richardson during the winter of 1974.