William GILLIGAN, Appellant,

v.

STATE of Alaska, Appellee.

No. 3107.

Supreme Court of Alaska.

Feb. 16, 1977.

Richard G. Lindsley, Jr., Asst. Public Defender, Kenai, Brian Shortell, Public Defender, Anchorage, for appellant.

Thomas M. Wardell, Dist. Atty., Kenai, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

DIMOND, Justice Pro Tem.

This is a sentence appeal.

In May 1973, following a plea of nolo contendere Gilligan was convicted of the crime of manslaughter and sentenced to imprisonment for five years. Two and one-half years of the sentence were suspended, with Gilligan to be placed on probation during that period of time.

One of the conditions of probation was that Gilligan not consume intoxicating liquor to excess. In May 1976, while Gilligan was on probation, a probation officer visited his home unannounced and found him to be extremely intoxicated. The officer filed a petition to revoke probation. In August 1976, after a hearing, the superior court ordered that Gilligan be imprisoned for the balance of the suspended sentence, i. e., two and one-half years. Gilligan has appealed on the ground that this sentence was excessive.

Appellate Rule 21(b) requires that written notice of appeal from a sentence be filed within 30 days after the sentence was imposed.[1] The state contends that the words "sentence was imposed", within the meaning of the rule, referred to the imposition of the original sentence of five years, with two and one-half years suspended, in May 1973. Since the notice of appeal was not filed until about three years after the original sentence was imposed, the state argues that the notice was untimely, and therefore, this court has no jurisdiction over this appeal.

There is no lack of jurisdiction. The legislature has provided that a sentence of the superior court may be appealed to the supreme court by a defendant on the ground that the sentence is excessive.[2] However, the state contends that the Au-

---

1. Appellate Rule 21(b) provides:
   (b) *Notice of Appeal.* Written notice of appeal from a sentence of the superior court by the state, or by a defendant appealing solely on the ground that the sentence is excessive, shall be filed with the clerk of the superior court which imposed the sentence not later than 30 days after sentence was imposed. The notice of appeal need only state that the sentence which is being appealed is too lenient or excessive.

2. AS 12.55.120(a) provides:
   A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defendant on the ground that the sentence is excessive. By appealing a sentence under this section, the defendant waives the right to plead that by a revision of the sentence resulting from the appeal he has been twice placed in jeopardy for the same offense. AS 22.05.010(b) provides:
   The supreme court has jurisdiction to hear appeals of sentences of imprisonment lawfully imposed by the superior courts on the grounds that the sentence is excessive or too lenient and, in the exercise of this jurisdiction, may modify the sentence as provided by law and by the constitution of this state. For the purpose of considering appeals of sentences on these grounds, the supreme court may sit in divisions.
   These statutes were enacted in 1969 following this court's 2–1 decision in *Bear v. State,* 439 P.2d 432 (Alaska 1968), where it was held that, absent statutory authority, the supreme court did not have authority to review sentences on the ground that they were excessive. AS 12.55.120(a) authorizes the appeal of a sentence exceeding one year and not for a lesser sen-

gust 1976 order of the court was, in effect, an order revoking the suspended portion of the sentence previously imposed in 1973, and was not in reality a sentence imposed by the superior court.

■■■ We disagree. Although a probation revocation hearing is not a criminal proceeding in the sense that indictment, jury trial and proof beyond a reasonable doubt are required, it is necessarily an outgrowth of the initial criminal case.[3] The substance of the court's action in August 1976 was to require one at conditional liberty, although under probation, to be imprisoned for another two and one-half years. This was a "sentence of imprisonment lawfully imposed" within the meaning of the statutes providing for sentence review.[4] The notice of appeal, as to this sentence, was timely filed. A probationer may seek relief by a timely sentence appeal following a probation revocation and imposition of a sentence of imprisonment.

The state suggests that our recent decisions in *Andrews v. State,* 552 P.2d 150 (Alaska 1976) and *Nattrass v. State,* 554 P.2d 399 (Alaska 1976) support its argument as to the jurisdictional issue.

Again, we disagree. Those cases held that where there is an appeal from the original sentence imposed, the supreme court must consider the entire or total sentence, including any period of suspension of deferred imposition.[5] Those cases shall not be construed as foreclosing the supreme court from reviewing that portion of a sentence of imprisonment, originally suspend-

ed, that is later imposed when probation has been revoked.[6]

This court has jurisdiction in this case to review the sentence imposed and to decide whether or not it is excessive. In determining this question, we consider the objectives of sentence review as originally set forth in our decision' in *State v. Chaney,* 477 P.2d 441 (Alaska 1970). Following our decision in *Chaney,* we have reiterated the sentence review criteria in numerous decisions. One of the most recent is *Andrews v. State,* 552 P.2d 150 (Alaska 1976). We feel it would be unnecessarily repetitious to again elaborate on such objectives or criteria.

■■■ The decision we must make is whether the superior court was clearly mistaken in imposing a two and one-half year sentence for violation of a condition of probation. As we stated in *Andrews* :

The scope of this court's sentence review authority requires that we make our own examination of the record with particular emphasis on the nature of the crime, the defendant's character, and the need for protection of the public. The controlling standard of review in sentence appeal matters is whether the trial court's sentence was "clearly mistaken." (footnote omitted)[7]

At the probation revocation proceeding, where Gilligan was present in person and also represented by counsel, there was testimony from the postmaster of Sterling, Alaska, that she had known Gilligan for about 22 years, that she did not feel he was a threat to the community, and that Gilligan loved people and animals and had a

---

tence. However, since the enactment of that statute, an expanded court of five justices, in the exercise of its constitutional rule-making authority, has promulgated Appellate Rule 21(a), which authorizes an appeal of a sentence of 45 days or more. Thus, the holding in the *Bear* case, decided by 2 out of 3 justices (Justice Rabinowitz dissenting), is now cast in doubt.

3. *Adams v. Ross,* 551 P.2d 948, 950 (Alaska 1976).

4. AS 12.55.120(a) and 22.05.010(b), *supra,* n. 2.

5. *Andrews v. State,* 552 P.2d 150, 152 (Alaska 1976); *Nattrass v. State,* 554 P.2d 399, 401 (Alaska 1976).

6. In *Martin v. State,* 517 P.2d 1399, 1403 (Alaska 1974) we sustained the imposition of four years of an original sentence upon a revocation of probation. *See also* ABA Standards Relating to Probation § 5.4(d) and commentary at 70 (approved draft 1970); and ABA Standards on Appellate Review of Sentences § 1.1(a)(iii) and Comment (d) at 17–18 (approved draft 1968).

7. *Andrews v. State,* 552 P.2d 150, 153 (Alaska 1976).

good-natured heart. Her testimony was supported by twelve letters she had obtained from various residents of the community, all of which were favorable to Gilligan. The general tenor of these letters was that Gilligan was a good-hearted old man, and was not a danger to the public.

On the other hand, Gilligan's probation officer, Wayne Stanley, made a written report to the court. He stated that he had called on Gilligan at the latter's home on May 11, 1976, that Gilligan was then highly intoxicated, that in his drunken condition he made statements which were in the nature of threats of bodily harm to Stanley, and that he related to Stanley, among other things, that "he [Gilligan] had a contract out on Jossie Miller, since he could not [under probation] own or possess any guns to kill her himself." There was also evidence that Gilligan was in the habit, once each month, of using his welfare or social security money to buy a fifth or a quart of blackberry brandy and then drink it practically all at one time.

At the time of the probation revocation proceeding, Gilligan was nearly 80 years of age. If an occasional bout with alcohol was the only thing involved, it would be difficult to justify imprisoning Gilligan for two and one-half years, despite the fact that intoxication was a violation of his probation, and that Gilligan had admitted at the probation revocation hearing that he had been intoxicated at the time the probation officer called upon him.

But it was not his drunkenness alone that led to the imposition of the two and one-half year sentence that had been suspended. The judge who presided at the revocation proceeding was the same judge who had imposed the original sentence. He mentioned the fact that Gilligan had been convicted on a plea of nolo contendere of the crime of manslaughter with a shotgun while under the influence of intoxicating beverages. He expressed concern about Gilligan making threats of bodily harm to the probation officer while intoxicated. The judge said:

> And he tells me today that he doesn't remember the incident of May 11th, 1976, wherein an attempt was made to pick a fight with the probation officer, as I understand this. A statement to the effect that if I had guns, before you could move from the chair to the door you'd be dead. An effort to involve—to utilize a knife apparently. The fact that the probation officer felt that had Mr. Gilligan been a little less intoxicated he probably would have constituted a real threat. I feel, and feel strongly, that Mr. Gilligan, while under the influence of intoxicating beverages, is a threat to people who are in his immediate presence.

Gilligan's threatening attitude towards the probation officer may not have had any basis in reality, but instead may have merely reflected the paranoia or delusions of a mind deranged by alcohol. But we cannot overlook the fact that the manslaughter conviction underlying this probation revocation involved a killing with a shotgun when Gilligan was intoxicated. The judge was not unreasonable in considering Gilligan to be a potentially dangerous person when he ingested alcohol in excessive amounts. At least, we cannot say that the judge was clearly mistaken, under all of the circumstances, in imposing the two and one-half years of imprisonment that had been originally suspended.[8]

The order appealed from is AFFIRMED.

ERWIN, J., not participating.

8. We note that the judge, after imposing a two and one-half year sentence, stated that Gilligan could be eligible for parole at any time. Also, he directed the Division of Corrections to provide alcoholic rehabilitation counseling while Gilligan was incarcerated.