William K. GOOD, Appellant,

v.

STATE of Alaska, Appellee.

No. 3554.

Supreme Court of Alaska.

Feb. 9, 1979.

---

Paul L. Davis and John W. Sivertsen, Jr., Edgar Paul Boyko & Assoc., Anchorage, for appellant.

Peter A. Michalski, Asst. Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

This is a sentence appeal. After entering pleas of guilty, appellant William K. Good was sentenced to incarceration for fifteen years for armed robbery (with a firearm)[1] and twenty years for burglary in an occupied dwelling,[2] the terms to be served concurrently. Good appeals these sentences[3] on the grounds that they are excessive and that the sentencing court did not have the benefit of a psychiatric evaluation before imposing sentence.

Good, then age 25, and another man, acting at Good's instigation, planned to burglarize a Fairbanks home which they were

---

1. AS 11.15.240 provides for a maximum prison term of fifteen years for robbery. AS 11.15.295 mandates a minimum ten year term for the use of a firearm during the commission of a robbery.

2. AS 11.20.080 provides for a maximum twenty year sentence for burglary in an occupied dwelling.

3. AS 12.55.120(a).

told contained furs and jewelry. When the two men arrived at the residence, they found two women and their young children on the premises. Good and his partner bound and gagged the two women at gunpoint, threatening to kick their heads off if they moved. After rummaging around the house, discussing what items they should take, appellant and his partner cut the telephone wires and retied the two women back-to-back. The men then loaded numerous furs, several pieces of jewelry, and some rifles into a van and drove off.

Appellant stated that he was "strung out on heroin" at the time of the offense. Although he had been working steadily for two years, he had been unable to save any money because of his drug habit. He committed the robbery because he had just been laid off work and needed the robbery proceeds to "make it through the winter." After Good was arrested, he provided information which led to the arrest of his robbery partner and to the recovery of some of the stolen property.

Appellant is a long-time drug abuser and an admitted heroin addict. This is his sixth drug-related felony conviction since 1970. He also has several misdemeanor convictions. Following one previous arrest, Good spent six months in a Texas narcotics rehabilitation program and three months in the Aftercare Program of the Anchorage Langdon Clinic. Good also spent six months in a Fairbanks halfway house following another conviction. He married shortly thereafter and remained off hard drugs for approximately one and one-half years until family and financial problems caused him to resume drug use. The presentence report states:

"[i]t was the opinion of Dr. Joseph D. Bloom . . . that [Good] should have been returned to the federal hospital in Fort Worth, Texas for another period of

in-patient therapy. Dr. Bloom felt that he could work in a successful way toward rehabilitating Mr. Good from his drug problem. It should be added that the medical doctors felt that Mr. Good could be reached and his behavioral patterns changed through means of psychotherapy."[4]

While free on bail for the instant offenses, Good voluntarily committed himself to the Alaska Family House, a long-term, highly structured halfway house program designed as an alternative to incarceration for drug abusers. Good, his wife, and two of their three children spent the four and one-half months prior to sentencing at Family House. Several Family House residents, including the program director and a counselor, testified at Good's sentencing hearing that Good was highly motivated to complete the program and to permanently change his lifestyle. The Family House program director also testified that the Division of Corrections would not classify an offender to Family House if his sentence were more than eight years.

The presentence report prepared on Good recommended a "long period of incarceration . . . followed by . . . probation during which continued efforts toward final victory over his addiction would become an eventuality." The sentencing judge found Good to be the "worst kind of an offender within the class"[5] in light of his prior record and the nature of the offenses. Although noting that rehabilitation was of paramount importance for Good, the court decided that a substantial sentence was called for in order to protect society from Good, whom the court believed was becoming a "professional criminal," to deter others from committing similar crimes, and to reflect the community's condemnation of such a dangerous crime.[6] The sentencing judge stated:

---

4. It is unclear from the presentence report when Dr. Bloom made this assessment.

5. *Donlun v. State*, 527 P.2d 472 (Alaska 1974).

6. Good subsequently filed a motion to modify and reduce his sentence pursuant to Rule 35(a),

Alaska R.Crim.P. One day later he filed a notice of sentence appeal. The sentencing court held that it no longer had jurisdiction to determine Good's motion to modify his sentence once a sentence appeal had been filed.

"I find that because of the type of an offense . . . that Mr. Good has forfeited his right to live in a free society; that he's going to have to spend some time in custody. Whether or not he does, in time, use the efforts of Family House at some time when he's released, that will remain to be seen. [I]f he's sincere in his own rehabilitation efforts, that [can] be accomplished later, as well as now. It's entirely up to Mr. Good."

We find that Good's argument regarding the necessity of psychological evaluation prior to sentencing is without merit. Initially, we note that appellant did not object to the absence of a current psychological report, nor did he request at any time prior to sentencing that the record be supplemented to incorporate additional psychological data. *See Brown v. State*, 578 P.2d 982, 983–84 (Alaska 1978). In addition, during argument at the sentencing hearing defense counsel pointed out that portion of the presentence report which reflected a professional opinion on Good's psychological state, i. e., that Dr. Bloom, who had treated Good in the past, believed that Good needed treatment rather than only imprisonment.

■ We have several times held that psychological evaluations are not necessarily indispensable to the judge imposing sentence. *Brown v. State, supra; Adams v. State*, 521 P.2d 516, 518–19 (Alaska 1974); *Newsom v. State*, 512 P.2d 557, 562–63 (Alaska 1973). At the time of sentencing the sentencing court had before it the presentence report which described Dr. Bloom's comments regarding Good's need of treatment, and letters and testimony of the program director and a counselor from Family House which detailed Good's psychological development during the four and one-half months he spent at Family House. When the sentencing judge is aware of and properly considers the defendant's psychological background and needs, we will not remand

the case for additional psychological evaluation. *Walton v. State*, 568 P.2d 981, 984 (Alaska 1977). The judge weighed this evidence, and we fail to see how further psychological evaluation would have added to his analysis. The court had sufficient evidence of Good's psychological needs to pass sentence. *See Brown v. State, supra; State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970).

Good next contends that the sentence imposed is excessive in that it precludes his access to drug rehabilitation treatment at Family House. We have held that we will not automatically reverse a sentence because a drug addict was incarcerated for his offense rather than placed in a drug rehabilitation program. *Johnson v. State*, 580 P.2d 700 (Alaska 1978); *Parks v. State*, 571 P.2d 1003, 1005 (Alaska 1977); *Fox v. State*, 569 P.2d 1335, 1337–38 (Alaska 1977). However, we believe that the sentencing court erred in not properly providing for the goal of rehabilitation within the framework of the sentence imposed.

■ The twin goals of sentencing are reformation of the offender and protection of the public.[7] Both should be considered equally and punishment should not be emphasized to the exclusion of rehabilitation potential. *See Christian v. State*, 513 P.2d 664, 670 (Alaska 1973).

It was certainly an appropriate response under the circumstances of this case for the sentencing court to provide for a lengthy period of incarceration. Armed robbery and burglary within an occupied dwelling are among the most serious of crimes because of the potential for physical injury.[8] Good carefully planned and executed this offense without regard for the potential risk to anyone who might be found on the premises. Use of a firearm aggravated the crime. Although these offenses are appellant's first robbery and burglary convictions, he was previously convicted of assault with a dangerous weapon.[9] In this sense then, this case is distinguishable from many

7. Alaska Const. art. I, § 12; *Perrin v. State*, 543 P.2d 413, 414 (Alaska 1975).

8. *See Robinson v. State*, 484 P.2d 686, 690 (Alaska 1971); *State v. Chaney*, 477 P.2d 441, 446 (Alaska 1970).

9. This conviction occurred in 1971. Appellant's other major convictions involved possession of drugs, receiving and concealing stolen property, and assault and battery on a correctional officer.

of the cases involving drug abusers cited by appellant which concern narcotic offenses.[10] Nevertheless, we cannot overlook the source of appellant's criminal behavior—his drug addiction.[11]

Antisocial behavior of the type perpetrated by appellant demands a lengthy term of imprisonment to impress both Good and others with the seriousness of this act, to express the community's condemnation, and to deter others from engaging in similar conduct.[12] It also serves to remove a risk to the public during Good's incarceration. However, as we stated in *Cleary v. State*, 548 P.2d 952, 955 (Alaska 1976): [13]

> Under our system most prisoners will be released someday; very few are held until senility or death itself has stilled criminal instincts. If we release persons who have the capacity for further crime, only temporary safety has been afforded. If nothing more than selfish interest compels us, then the principle of "reformation" enunciated in our state constitution is worth the effort, for when it works, it

reduces crime. The end sought by rehabilitation is a stable individual returned to community life, capable of constructive participation and incapable of committing crime.[14]

■ Our review of the record [15] reveals a man whose criminal behavior stems largely from a drug abuse problem. Good admitted the seriousness of his offenses and expressed remorse for the fear and property loss he caused his victims. It is noteworthy that Good voluntarily committed himself to Family House while released on bail and has recognized that he will only be helped if he commits himself to a treatment program. Good also expressed considerable concern over his family in terms of making himself a better husband and father and in assuring his dependents of his continued financial support. All of these factors indicate that rehabilitation should be given a high priority in sentencing Good. In fact, the sentencing judge so found. However, the sentence imposed makes no provision for rehabilitative treatment.

10. *E. g., Huff v. State*, 568 P.2d 1014 (Alaska 1977); *Waters v. State*, 483 P.2d 199 (Alaska 1971).

11. The author of an article analyzing prior Alaska robbery cases has written:

"Robbery involves somewhat different considerations [than other crimes against property], given its higher potential for injury. The court has affirmed substantial sentences where violence has actually occurred or where life has been endangered, or where prior convictions indicate that 'less stern measures have proven unsuccessful.' Nonetheless, the opinions evidence a willingness to take a hard look at the age, background, and psychiatric profile of the individual offender, and it cannot be said that the court considers the possibility of sentence relief to be automatically foreclosed in the robbery area. However, it would appear appropriate to take into consideration the potential injury to the victim in arriving at a proper sentence." (footnotes omitted)

Erwin, Five Years of Sentence Review in Alaska, 5 U.C.L.A.—Alaska L.Rev. 1, 13 (1975).

12. It is noteworthy that in the history of sentence review in Alaska, this court has only once affirmed a twenty year sentence for burglary. *Price v. State*, 565 P.2d 858 (Alaska 1977) (ten years each for two counts of burgla-

ry in a dwelling, terms to run consecutively). Fifteen years for armed robbery has been affirmed a few times. *E. g., Collins v. State*, 574 P.2d 1278 (Alaska 1978); *Bragg v. State*, 560 P.2d 391 (Alaska 1977); *Benefield v. State*, 559 P.2d 91 (Alaska 1977). Generally, however, terms of such length are imposed for crimes involving death or physical injury. *See generally, Cleary v. State*, 548 P.2d 952, 954–55 (Alaska 1976).

13. *Cleary* involved a 29 year old heroin addict sentenced to two consecutive ten year terms for five counts of robbery, consecutive to a five year federal prison term for armed bank robbery. Finding this sentence excessive and without provision for rehabilitation, we reversed.

14. *See also*, ABA Standards Relating to Sentencing Alternatives and Procedures § 2.1(d), comment at 54–55 (Approved Draft 1968).

15. The scope of appellate review of a sentence imposed by a lower court requires that we make an independent examination of the record. *Perrin v. State*, 543 P.2d 413, 415 (Alaska 1975); *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970).

A substantial term of incarceration would satisfy the goals of protecting society by isolating a dangerous offender, of reaffirming societal norms, and of deterring appellant and others. Yet the goal of rehabilitation, particularly where the offender is a drug addict, whom studies show will not likely be "cured" by imprisonment alone, should also have been woven into Good's sentence. The sentencing court should have recommended such treatment at any appropriate time during Good's sentence at the discretion of the Division of Corrections. As the sentence stands, Good might serve a lengthy term and then be released without treatment. Such a result benefits neither Good nor society, for the risk of future criminal behavior is not then as diminished as it might be if the offender receives treatment.

We do not view the sentences imposed as excessive. The sentences are affirmed. We believe that the judgment should contain a recommendation to the Division of Corrections that Good receive such treatment for his drug addiction as the Division of Corrections may find advisable. We remand with directions to enter an amended judgment which includes such a recommendation.

SENTENCE AFFIRMED. REMANDED FOR ENTRY OF AMENDED JUDGMENT.