Margaret **CHAPPELL,** Appellant,

v.

**STATE of Alaska,** Appellee.

**No. 4054.**

Supreme Court of Alaska.

March 30, 1979.

Walter Share, Asst. Public Defender, Juneau, Brian Shortell, Public Defender, Anchorage, for appellant.

Larry R. Weeks, Dist. Atty., Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

PER CURIAM.

Margaret Chappell appeals her sentence of one year in jail on each of six counts for obtaining, by means of false statements, greater public assistance than that to which she is entitled, a violation of AS 47.25.405. The sentences on five of the counts were suspended for a period of one year.[1]

From the facts stated in the probation report which were admitted by Mrs. Chappell, she wrongfully obtained, over a six-year period, $34,241.00 from the Aid to Families with Dependent Children Program; $1,148.76 from the Medical Assistance Program and additionally is believed to have received an overpayment of $9,946.00 under the Food Stamp Program.[2]

At the time of sentencing, Mrs. Chappell was forty-four years old. She has had twelve children, eleven of whom are living. Seven of the children, ranging in ages from seventeen to eight, resided with Mrs. Chappell and her husband who has been totally disabled since 1967 when he suffered a mas-

---

1. The sentence of the district court was affirmed, on appeal, by the superior court.

2. She was not charged with violations of the Food Stamp Program, but admitted obtaining such assistance wrongfully.

sive heart attack. Mrs. Chappell has apparently been an excellent mother. The older children are productive members of the Juneau community, and the younger children are well-liked by their classmates and teachers, according to the probation officer's report.

Mrs. Chappell was aware at the time that she filed applications for public assistance that if she reported the total amount of income from her husband's veteran's and social security benefits, she would have been found ineligible for the State Program of Aid to Families with Dependent Children and Medical Assistance. She told the probationary officer that she could not support her husband and her children on the amount of money she was receiving. The probation officer found that Mrs. Chappell was not remorseful at receiving the illegal funds but she was concerned over being caught and was fearful of public condemnation for her conduct.

The probation officer found it highly unlikely that Mrs. Chappell would ever be able to repay the state but considered that since Mrs. Chappell was the head of a family of seven minor children, incarceration would only add to the further financial burden of the Chappell family and the state. The probation officer's report recommended a five-year suspended sentence, including among its conditions partial repayment to the state and voluntary public service during the five-year period.

Although considering Mrs. Chappell's offense to be "outrageous," the district attorney had no suggested alternative to the probation officer's recommendation.

■ In imposing the sentence of one year to serve, the district court was apparently influenced by the amount of money fraudulently obtained and its belief that no meaningful restitution could be obtained. Although not discussing in detail the *Chaney*[3] criteria for sentencing, the judge indicated concern with deterring the defendant and others and reaffirmation of societal norms. He further indicated a belief that remorse was a necessary concomitant of rehabilitation, and that incarceration was required in this case to assure meaningful remorse. The court was also influenced by the belief that funds were used for other items than those necessary for support of the family.[4]

■ Mrs. Chappell contends that the district court did not adequately consider the *Chaney* requirements. In *Evans v. State,* 574 P.2d 24, 26 (Alaska 1978), we stated:

With reference to the sentence appeal, we hold that a trial judge need only demonstrate consideration of sentencing goals stated in *State v. Chaney,* 477 P.2d 441 (Alaska 1970). The trial court need not recite the goals of sentencing as long as it is clear that it has considered those goals.

While the sentencing court might well have given a more extensive review of the standards, it was apparent that they were con-

3. In *State v. Chaney,* 477 P.2d 441, 443 (Alaska 1970), we stated that courts, in sentencing, should consider rehabilitation of the defendant, isolation, deterrence of the defendant, deterrence of others and reaffirmation of societal norms.

4. At sentencing, the court stated:

All right, Ms. Chappell, would you stand for the sentencing please. On the basis of pleas entered in this case, I feel that it is necessary at this time to sentence you in a manner which will be a deterrent to you and others in this matter, but I don't feel that any meaningful restitution could be made . . . that any rehabilitation in any case is started by the person being in a situation of remorse and regret from what they've done, which I don't feel has been shown in your case . . that I don't think you can make meaningful

restitution and I have seen no real effort on your part to enter into any public service, or if you're working or caring for the family, I don't see where any time it can be done. I feel that it is total deprivation of $4,600 in order to feed your family, while at the same time you're buying a 1975 automobile and caring for and buying your own home, and paying for a new refrigerator and things like that, is—especially through people like Beneficial Finance, indicates that the money has not been that which was required solely for the support, but has gone for other material . . . and that I feel that this action is necessary in order to bring home to the people that welfare fraud being white collar fraud, is just as serious as going in and stealing the money out of a safe or bank.

sidered and different requirements given varying weights according to the facts of this case.

██ It is also contended that since the maximum sentence for obtaining assistance by fraud in violation of AS 47.25.405 is one year in jail and a $1,000.00 fine that, in effect, Mrs. Chappell was sentenced as a worst possible offender. The superior court in reviewing the sentence did not consider it necessary to determine whether Chappell was in the category of the worst type offender since she did not receive the maximum sentence. Since it is apparent that Mrs. Chappell could have received consecutive sentences totalling six years imprisonment and a $6,000.00 fine on all six counts, it is readily apparent that far from the most severe possible sentence was imposed. The superior court did not err in concluding that there was no need to determine whether Chappell was sentenced as a worst possible offender.[5]

 Upon review of a sentence lawfully imposed, we are limited to determining whether the sentencing court was clearly mistaken in imposing a particular sentence.[6] In view of the substantial sums fraudulently obtained, we are not convinced that the trial court was clearly mistaken.[7]

AFFIRMED.

---

5. While the aggregate offenses would justify a characterization as being among the worst violations of the statute, Mrs. Chappell's record as a devoted mother without prior convictions would not justify classifying her as a worst possible offender.

6. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

7. In *Risher v. State*, 523 P.2d 421 (Alaska 1974), a sentence of five years imprisonment for welfare fraud against the state was affirmed. Risher had obtained $11,650.00 fraudulently over a period of four years. Risher had a prior conviction and did not have family responsibilities similar to those of Mrs. Chappell.