**James David HOUSTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5364.**

Court of Appeals of Alaska.

July 30, 1982.

---

Dana Fabe, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Stephen Branchflower, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

James Houston appeals his sentence of fifteen-years imprisonment, with three years suspended, imposed following his *nolo contendere* plea to manslaughter, former AS 11.15.040. Houston was originally charged with and convicted of second-degree murder. He previously appealed that conviction and the supreme court reversed, finding error in the lower court's failure to grant a bifurcated trial on the separate defenses of insanity and self-defense and in

the court's compelling a psychiatrist hired by the defense to testify against the defendant. *Houston v. State*, 602 P.2d 784 (Alaska 1979). After the remand, the district attorney changed the charge to manslaughter. Houston pleaded no contest to that charge on May 6, 1980. After hearing argument from the parties and the testimony of a correctional officer, the trial court imposed the sentence which forms the basis of this appeal.

Houston's crime is described in the opinion of the supreme court, 602 P.2d at 785–86. After drinking heavily throughout the evening, Houston went into the men's room of an Anchorage bar and shot and killed a man. Houston testified that the victim had made a derogatory, racial remark to him and had reached toward his pocket, as if going for a gun. One witness testified he had not heard Houston or the victim say anything and that only two to four seconds had elapsed between the time the victim entered the men's room and the first shot.

Houston was a twenty-six-year-old army sergeant at the time of the offense, serving an unaccompanied tour of duty at Fort Richardson during which his wife and child resided in Germany, their native homeland. Houston had served honorably in the army for seven years, including 11 months in Vietnam. He had no prior criminal record. Following his service in Vietnam, he began to drink heavily. The drinking intensified after he came to Alaska. Eight days before the shooting, he checked himself into Elmendorf Hospital for alcohol abuse treatment. He was diagnosed a chronic alcoholic and released to resume his military duties two days before the crime. He had been detoxified but had received little or no psychological counseling. Upon his release Houston began drinking heavily again, and he subsequently had little recollection of the events during the time between his discharge and the shooting.

Three psychiatrists diagnosed Houston as a chronic alcoholic. Although they disagreed over whether he was legally responsible for his actions on the night of the shooting, they agreed that the shooting appeared to have occurred as a reflex reaction—a response to a perceived threat such as one that he had been trained to react to by the military.

Houston had been incarcerated for almost four years at the time of his resentencing. He had been a model prisoner who had received no disciplinary reports and had been praised for his institutional adjustment and job performance in prison. He had completed over a year of college with high grades. The initial sentencing order recommended that he receive psychological and alcoholism counseling, and the first classification report by the Division of Corrections states "his alcoholism and emotional instability should be considered." The prison records do not show that Houston received any significant counseling during his first four years in prison.

Houston was originally sentenced to fifteen years' imprisonment after his conviction for second-degree murder. Resentencing on the manslaughter plea occurred in May, 1980, before the same judge who conducted the original trial and sentencing. Houston was given a sentence of fifteen years' imprisonment, with three years suspended. The reasons for the imposed sentence were briefly set out by the judge.[1]

1. The full explanation given by the sentencing judge is as follows:

[W]hen I sentenced you to 15 years for the second degree murder I took into consideration your age and your background and your problem with alcohol and your substantial time in Vietnam. Whether that had anything to do with this, I don't know, but I listened to the psychiatrist which would suggest that this might have been an automatic reaction; I'm not persuaded that that's really all that meaningful in this situation .... When I look at these facts and think in terms of manslaughter, this would be the most aggravated type of manslaughter. But my legal training and ideas of justice demonstrate to me that on resentencing, some adjustment has to be made. I'm going to sentence you to 15 years and I'll suspend 3 of it and you'll be placed on probation then for a period of time when you're released. I think that having some contact with a probation officer is probably going to be helpful in this case .... And Mr. Houston, I am pleased with your

■ Houston lodges four separate attacks on his sentence. First, Houston claims that the sentencing judge failed to discuss adequately the *Chaney* factors.[2] Although the court "need not recite the goals of sentencing as long as it is clear that it has considered those goals" *Evans v. State*, 574 P.2d 24, 26 (Alaska 1978),[3] full explanation of a sentencing decision contributes to the rationality of the sentence, facilitates the reviewing court's evaluation of the propriety of the sentence, and fosters public confidence in the criminal justice system. A full explanation may also aid the correctional authorities and have therapeutic value in assisting the defendant to accept his sentence without bitterness. *Alpiak v. State*, 581 P.2d at 665 n.2; *Perrin v. State*, 543 P.2d 413, 418 (Alaska 1975); *State v. Chaney*, 477 P.2d 441, 447 n.26 (Alaska 1970).

■ We believe the trial court adequately addressed the facts in a manner consistent with the cases cited. It is clear from the judge's remarks that he had assumed that a high potential for rehabilitation existed when he imposed a relatively lenient sentence for second-degree murder and that he viewed Houston's good intervening institutional record as justifying that original determination. We therefore conclude that the court adequately addressed rehabilitation. Less adequate is the treatment of isolation, deterrence, and affirmation of community norms. Where a trial judge rejects probation as a suitable sentence and concludes that a period of incarceration is in order, the record should reflect the basis for that conclusion. Incarceration and isolation are not synonymous. A judge may feel that a period of incarceration is necessary for rehabilitation or deterrence to emphasize to the defendant the seriousness of his offense and the likely consequences of recidivism. However, as a sentencing goal, isolation is reserved for those who can be neither rehabilitated nor deterred; that is, those who are reasonably likely to commit further criminal activity unless incarcerated.

It is clear in this case that the trial court considered Houston dangerous despite his rehabilitative potential. Given the nature of the crime and the circumstances surrounding its commission, as well as the absence of a reasonable explanation for its occurrence, we are unable to conclude that the sentence imposed reflects improper consideration or balancing of isolation, deterrence, and affirmation of community norms.[4]

progress while in confinement and I considered that in my sentence.

2. *State v. Chaney*, 477 P.2d 441 (Alaska 1970).

3. *See also Padie v. State*, 594 P.2d 50, 62 n.40 (Alaska 1979); *Chappell v. State*, 592 P.2d 1218, 1220 (Alaska 1979); *Alpiak v. State*, 581 P.2d 664, 665 n.2 (Alaska 1978).

4. We would prefer that trial judges specifically address each of the *Chaney* criteria and expressly relate each criterion to the facts the court considers relevant in the specific case before it. Such remarks should clearly identify the *Chaney* criteria accorded preference, explain why preference was given, and should be presented in concluding remarks after the parties' final arguments and the defendant's allocution. To enforce these guidelines strictly would, however, result in remands for resentencing in a substantial number of cases with little likelihood that the ultimate results would change. In order to determine why the trial judge imposed a specific sentence, we will review the record of the entire hearing to consider the evidence presented, the issues perceived to be significant by the parties, and the trial court's reaction to the arguments presented. If based upon that determination we can conclude that the trial court's decision is supported by substantial evidence and is consistent with the *Chaney* criteria, we will affirm the sentence even though the judge's concluding remarks, viewed in isolation, are incomplete. Here it is clear that the trial judge considered Houston dangerous and believed that despite Houston's good record in prison and previous good record in the military, a long period of imprisonment was necessary to protect the public. We would, however, remind the trial bench of the comment voiced by the supreme court in *Amidon v. State*, 604 P.2d 575, 578 n.7 (Alaska 1979) (citations omitted), where the court said:

[W]e caution judges that the practice of 'readopting' previous sentence remarks at resentencing is inadvisable. Due care must be taken to demonstrate a thorough and thoughtful sentencing decision.

We also note that the new criminal code may require a more detailed statement of reasons

■■ Houston's second and third claims are that impermissible considerations entered into the sentencing decision. He argues that certain remarks of the sentencing judge, directed to him just prior to the announcement of the sentence, indicate that the judge improperly relied on speculation that the shooting was racially motivated.[5] The state responds that there was evidence in the record to suggest that the killing was racially motivated and that the comments reflect only the judge's inability to ascertain the true reason for the shooting. We agree with the state that the judge's comments reflect his perplexity over a killing which was difficult to understand. The judge's remarks followed Houston's own statement concerning his inability to explain the shooting. Under these circumstances, we find no error. The trial

court must endeavor to ascertain the reasons for a criminal episode in order to determine the likelihood of a reoccurrence and the consequent danger, if any, presented by the defendant to the community. Other things being equal, an unexplained killing may warrant a longer period of incarceration to protect the public than one where the likely explanation suggests causes that can be cured or controlled. *Cf. Nelson v. State*, 619 P.2d 480, 481 n.2 (Alaska App. 1980) (Inexplicable nature of crime cited as one of the factors justifying the trial court's conclusion that the prospect of the defendant's rehabilitation was unlikely).

■■ Houston argues next that other remarks by the sentencing judge indicate that the judge improperly relied on the prosecutor's argument that Houston's offense was really a first degree-murder.[6] We are satis-

---

than that mandated by present case law. *See* AS 12.55.025(a). Interpretation of this section must, however, await cases decided under the new code.

5. Appellant points to the following remarks:
THE COURT: But Mr. Houston, I've often speculated as to why you—I have some frightening conclusions. You know, you bought the gun that day and you loaded it and you were—indicated some fear of the people that were surrounding you. It's a thing that's always really terrorized me was that I hope that you didn't decide on that occasion that you were going to kill a white man. That's—I often wondered about that.
MR. HOUSTON: No, it didn't come down like that.
THE COURT: Didn't come down like that.
MR. HOUSTON: No.
THE COURT: Because it doesn't make any sense. But that's the only thought that ran through my mind. I don't—I wasn't too impressed with the idea that it was a robbery, I don't know why it didn't—but just from your remarks that you made in the other bar which would suggest to me that you felt some hostility and I assume that it would be from a so-called dominant race, but I don't know. But for whatever it's worth, that thought ran through my mind and I'm not persuaded that that's the reason but that thought ran through my mind so you can reflect on that . . . .

6. The comments in question include the following remarks:
MS. FABE: . . . [*Sumabat*] was an unusual kind of manslaughter. And I would submit that this one is as well. And the . . . .

THE COURT: Of course if you *look—if you take a hard look at the facts, it looks more like murder one than anything else but I realize it's* . . . .
MS. FABE: Well, Your Honor, I think—it couldn't be murder one just because there's
. . . .
THE COURT: Well, I mean, just . . . .
MS. FABE: . . . no premeditation. I mean it was—it happened so quickly that I think that there's no . . . .
THE COURT: Course we don't . . . .
MS. FABE: . . . question . . . .
THE COURT: We don't know how quickly it lasts.
MS. FABE: . . . he couldn't have premeditated . . . .
THE COURT: I mean he bought the gun the same day. It only takes one second. You take a gun out and you point it at somebody and you pull the trigger. How much time is required for premeditation. You point a loaded weapon at him, you bought it the same day you know, he knows what a gun will do, it'll blow you apart but . . . .
MS. FABE: Well, I that [sic] though the testimony at trial indicated that he was suffering from—all right, and again, the jury did not apparently—I mean it's hard to say what weight this can be given since it's not the theory that the jury apparently subscribed to but . . . .
THE COURT: I don't—I agree with you, he was convicted of murder two, I've got a manslaughter, I realize that I have to reduce the sentence, you don't have any argument from me because *I gave him 15 years for what looked like a murder one.* The reason I gave him 15 years because of the things that

fied that the trial judge did not sentence Houston as a convicted murderer.

■ The judge observed the demeanor of the witnesses and heard their examination and cross-examination. Testimony under oath and subject to cross-examination is clearly appropriate for consideration by the trial court in making the necessary fact findings in preparation for imposition of sentence. The court's remarks indicate that it rejected the state's theory of felony murder, *i.e.*, a murder committed in the course of a robbery, and finally discounted racial motivation as the basis of the crime. The court remained in doubt regarding the genesis of the crime, a doubt shared by the defendant himself. We find no prejudicial error in the comments made by the trial judge in his dialogue with counsel and the defendant.

Houston's final argument is that a sentence of fifteen years' imprisonment with three years suspended is excessive. The state argues that the goals of isolation, deterrence, and community condemnation support the present sentence even if the record shows that Houston does not require further incarceration for his rehabilitation.

■ In light of the finding, which is supported by the record, that Houston committed an unexplained homicide requiring isolation to protect the community, we conclude that the sentence is not excessive. In appropriate circumstances, sentences of ten years or more for manslaughter are not clearly mistaken even where the defendant is a first offender with a good background.

See, *e.g.*, Notaro v. State, 608 P.2d 769, 770 (Alaska 1980); *Padie v. State*, 594 P.2d 50, 62–63 (Alaska 1979).

Because of the uncertainty surrounding Houston's motivation for the killing and the extent to which his mental and emotional states present the risk of further recidivism, we cannot conclude that the length of the sentence is "clearly mistaken." Although the trial court found Houston's conduct while he was in custody commendable, this finding does not provide the assurance that Houston could function effectively outside a prison environment.

■ We assume that the trial court's failure to include a provision for psychological and alcohol counseling in the final judgment was an oversight since it was included in the original judgment. Therefore, we direct the amendment of the present judgment to reflect that recommendation. We recognize, however, that this is a recommendation, not an order, and that the final determination regarding appropriate rehabilitative services is administrative, not judicial. Finally, we express no opinion as to whether Alaska Rule of Criminal Procedure 35(b) would warrant a trial judge in releasing or shortening the sentence of a convicted felon whom the trial judge believes dangerous to the community solely because of a disagreement between the judge and the Division of Corrections over the convict's need for alcohol counseling or psychological treatment.

The judgment of the superior court is AFFIRMED as modified.[7]

---

you're talking about. He was a good soldier, he had problems with alcohol, he was intoxicated, but I took all those . . . .
(Emphasis added).

7. The dissent argues that the trial judge could and probably should have said more in explanation of his reasons at resentencing. We agree. We do not, however, agree that a remand for further trial court comments would serve any useful purpose in light of the existing record and we fear that such a remand might cruelly raise Houston's hopes for a modification of sentence; hopes which, on this record, would most likely not be realized.

In those cases where inadequate sentencing findings have triggered remands one or more of

four possibilities existed. The first possibility is that the trial court, given a more thorough, thoughtful, and sensitive evaluation of the existing record, might, however unlikely, reduce or modify the existing sentence favorably for the defendant. The second possibility is that the appellate court, uncertain as to the trial court's reasons for the sentence imposed, might, if those reasons were expressed more fully, find them deficient and as a result reduce or modify the sentence favorably to the defendant. The third possibility is that the appellate court's opinion found certain legal errors in the trial court's sentencing which might on remand

BRYNER, Chief Judge, dissenting.

Although I do not believe that the sentence imposed by the superior court in this case—fifteen years with three suspended—would necessarily be excessive, I am unable to conclude, as does the majority of the court, that the superior court adequately explained its sentence. Since I believe it is a well-established proposition that proper appellate review is not possible when a sentencing court does not adequately set forth, on the record, its reasons for imposing a particular sentence, I respectfully dissent.

As the state has conceded in this appeal, Judge Buckalew's sentencing remarks did not specifically articulate the critical sentencing factors enumerated in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). However, the state argues, and the majority of the court agrees, that the sentencing court's remarks were sufficient under *Evans v. State*, 574 P.2d 24, 26 (Alaska 1978), in which the supreme court held that the

trial court "need not recite the goals of sentencing as long as it is clear that it has considered these goals." The majority's opinion acknowledges the decisions of the Alaska Supreme Court emphasizing the importance of a full explanation of a sentencing decision by the trial court. *See, e.g., Alpiak v. State*, 581 P.2d 664, 665 n.2 (Alaska 1978); *Perrin v. State*, 543 P.2d 413, 418 (Alaska 1975); *State v. Chaney*, 477 P.2d at 447. Yet the majority concludes that, in this case, "the trial court adequately addressed the facts in a manner consistent with" the mandate of these cases.

I cannot agree with the majority's assessment of the adequacy of Judge Buckalew's sentencing remarks. In my view, the sentencing remarks of Judge Buckalew do not make it clear that he appropriately considered the requisite *Chaney* goals. The explanation given by the judge provides little if any insight into which goals were

result in a reduced or modified sentence. The fourth possibility is that the appellate court perceived some evidence in the record, apparently overlooked by the trial court, which given the trial court's remarks might influence that court to deal more leniently with the defendant. Aside from an unenforceable recommendation that psychological or alcohol counseling be provided Houston, a recommendation included in the first judgment but inexplicably omitted from the second, we do not understand the dissent to suggest that any of the four possibilities mentioned exist here. A sentence of 12 years to serve would appear appropriate for someone convicted of any degree of homicide where the trial judge could reasonably conclude, as this one did, based upon substantial evidence in the trial record, that the defendant intentionally shot and killed a total stranger without an apparent explanation or reason. Houston's hope for a reduced sentence was based upon the possibility that this court would interpret *Avery v. State*, 514 P.2d 637 (Alaska 1973) to require a trial court to ignore at sentencing any facts in the trial record relevant to a *Chaney* evaluation which were not either implicit in the trial jury's verdict or the defendant's plea. We have rejected that interpretation of *Avery* in *Huckaby v. State*, 632 P.2d 975, 977 n.2 (Alaska App.1981), in which we held that a trial court may consider any facts verified in the record which are material to the defendant's rehabilitation, or the protection of the community, so long as the resulting sentence is within the range permitted for the crime to which the defendant was convicted

and so long as the sentence is not clearly mistaken. *McClain v. State*, 519 P.2d 811 (Alaska 1974). Given that decision, it is highly unlikely that a remand for further sentencing comments would result in a modification favorable to Mr. Houston.

Finally, while we agree that courts should, as a matter of course, recommend alcohol, drug, or psychiatric treatment wherever such treatment might be helpful, we believe that the dissent's treatment of the relation between Houston's drinking and his crime includes two errors. The first, is the logical error of assuming *post hoc ergo proper hoc*; the fallacy of believing that because one event follows another the two are causally related. Houston's crime clearly followed a period of substantial drinking. He has been diagnosed as an alcoholic. It does not necessarily follow that alcohol caused this crime or that successful alcohol or psychiatric treatment would eliminate the risk Houston poses to the community. We have concluded, in the light of this record, that the trial court could find that Houston's killing is largely unexplained. Our careful review of the testimony concerning Houston's alcohol use and psychiatric problems, if any, has not changed this view. The dissent's second error is to assume that alcohol treatment, if provided, will necessarily succeed in eliminating whatever alcohol problems Houston has. We are less optimistic in this regard but agree that it cannot hurt and might help. The availability of alcohol or psychiatric treatment to Houston would not, however, in our view mandate or even warrant a substantially reduced sentence.

considered, the amount of weight given to the various goals, or the facts deemed significant by the judge in determining the amount of weight to be given to these sentencing goals.

Careful examination of the sentencing court's remarks reveals their deficiency. The initial portion of Judge Buckalew's sentencing explanation consisted of a recitation of the facts that had been taken into account when Houston was originally sentenced:

> [W]hen I sentenced you to 15 years for the second degree murder I took into consideration your age and your background and your problem with alcohol and your substantial time in Vietnam. Whether that had anything to do with this, I don't know, but I listened to the psychiatrist which would suggest that this might have been an automatic reaction; I am not persuaded that that's really all that meaningful in this situation . . . .

These comments are unrelated to the *Chaney* criteria. To the extent that they may have been intended to refer back to comments made by the judge when he imposed Houston's original sentence, the comments must be deemed inappropriate. Our supreme court has specifically prohibited the practice of "readopting" prior sentencing explanations in the course of resentencing a defendant. *See Amidon v. State*, 604 P.2d 575, 578 n.7 (Alaska 1979).

Judge Buckalew next stated his conclusion that Houston's offense was the worst in its category: "When I look at these facts and think in terms of manslaughter, this would be the most aggravated type of manslaughter." While this statement clearly articulates the judge's assessment of the seriousness of the offense, as with his initial statement, it gives little indication that consideration was given to the *Chaney* criteria before sentence was imposed.

This brief statement was followed by the conclusory indication that Judge Buckalew

felt compelled to make some adjustment in Houston's original sentence in light of the reduced charge:

> But my legal training and ideas of justice demonstrate to me that on resentencing, some adjustment has to be made.

Certainly, this reference to "my legal training and ideas of justice" cannot be taken as a clear indication that the judge had given consideration to the *Chaney* criteria.

Judge Buckalew next simply pronounced the new sentence:

> I'm going to sentence you to 15 years and I'll suspend 3 of it and you'll be placed on probation then for a period of time when you're released.

In conjunction with this statement, the judge said:

> I think that having some contact with a probation officer upon release is probably going to be helpful in this case . . . .

This comment, insofar as it can be construed as an oblique and passing reference to the need to rehabilitate Houston, is the only one made by the judge in the course of his sentencing explanation that can conceivably be viewed as indicating any consideration of the *Chaney* criteria.

The judge's final remarks in sentencing Houston did nothing more than express recognition of Houston's progress while incarcerated:

> And Mr. Houston, I am pleased with your progress while in confinement and I considered that in my sentence.

While the judge did indicate that he took note of Houston's progress in determining his new sentence, it is crucial to note that this remark was conclusory, not explanatory, in nature. This comment tells nothing of the extent to which Houston's progress was deemed significant in fashioning his sentence, and in no way does it indicate that the judge's recognition of Houston's progress was evaluated in light of the *Chaney* criteria.[1]

---

1. The lack of any indication that Houston's progress during the four-year interval between his initial sentencing and his resentencing was considered in light of the *Chaney* criteria is of particular importance, since the supreme court has expressly determined that, in sentencing an

I have set out in detail and commented upon the trial court's sentencing remarks in this case not to belabor what I consider to be their inadequacy, but rather to illustrate a point. The majority acknowledges that these remarks constitute "the full explanation given by the sentencing judge." On the basis of these remarks the majority concludes that the sentencing judge, even though he did not specifically mention the *Chaney* sentencing goals, complied with the requirement of *Evans v. State*, 574 P.2d at 26, making clear the fact that all *Chaney* goals were actually considered. Yet, as I have indicated above, except for the cursory reference to the benefits of probation, the judge's sentencing explanation was utterly devoid of any indication, either explicit or implicit, that the *Chaney* goals were considered. Accordingly, I believe that the majority's decision ascribes a significance to the superior court's sentencing explanation that is simply unwarranted.

My disagreement in this case is not limited to the conclusion that the majority has misread the sentencing remarks of the superior court, giving them too much significance. *State v. Chaney* imposes upon trial courts the duty to consider the five basic sentencing goals in the course of imposing a sentence. *Chaney* also requires an appellate court, reviewing the sentencing decision of a trial court, to ascertain that the

basic sentencing goals were appropriately considered. It is for the sentencing court to establish the priority and relationship of these goals, based on the particular circumstances of each case. *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973). On appeal, the reviewing court, by an independent reading of the record, must ascertain that the priority given to the *Chaney* goals by the sentencing court was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

Thus, the appellate court's duty of determining whether the sentencing court properly considered the *Chaney* sentencing goals and whether proper weight was allocated to the various goals is of primary importance in a sentence appeal. Yet it is virtually impossible, when confronted by a record that is utterly silent as to the sentencing court's reasons for imposing sentence, to make a realistic determination as to whether the lower court was clearly mistaken. *See, e.g., Soroka v. State*, 598 P.2d 69 (Alaska 1979); *Andrews v. State*, 552 P.2d 150, 154 (Alaska 1976). Without an ample discussion of the sentencing court's reasons for imposing sentence, the reviewing court has no basis for determining whether the sentence was clearly mistaken, and, accordingly, will never be in a position to state with assurance that a sentence was not clearly mistaken.[2]

---

offender whose crime was committed a substantial period of time prior to the date of sentencing, the sentencing court, in its application of the *Chaney* criteria, must consider the offender's progress and his status at the time the sentence is imposed. Application of the *Chaney* criteria to the offender as he was at the time of the crime in such circumstances is inappropriate. *Padie v. State*, 594 P.2d 50, 62–63 (Alaska 1979).

**2.** Cf. *Johnson v. State*, 631 P.2d 508, 512–513 (Alaska App.1981) (trial court's failure to make adequate findings impinges upon the defendant's right to appeal). Beyond furnishing an inadequate basis for appellate review, the extreme brevity of the sentencing judge's remarks in this case gives rise to a substantial question as to whether that judge gave full and rational consideration to Houston's sentence before it was imposed. An ample explanation by a sentencing judge of the sentence imposed provides assurance that the sentence was care-

fully thought through and adequately considered before its imposition. No such assurance exists where sentencing remarks are cursory in nature, affording virtually no insight to the thought processes of the sentencing judge. In such cases, the lack of an explanation may be nothing more than a means to avoid coming to grips with particularly difficult sentencing problems.

The lack of a full explanation here leaves this case open to such an interpretation. The possibility that the sentence imposed was not carefully reasoned cannot be precluded.

In light of the deficient sentencing remarks in this case, I disagree with the majority's view that resentencing in this case would be a futile gesture. Given the distinct possibility that Houston's sentence was not carefully and dispassionately thought out by the sentencing court, it is difficult to understand how the majority can confidently predict that Houston would, in fact, be destined to the same fate if

In my opinion, this situation exists in the present case. The cursory and highly conclusory remarks made by Judge Buckalew preclude an adequate determination on appeal, as mandated by *McClain v. State*, as to whether the sentence imposed below was clearly mistaken.

The majority opinion in the present case manages to avoid this problem by reliance on a standard of review that, in my view, ignores the requirements of *Chaney, Asitonia*, and *McClain*. The majority opinion, in affirming Houston's sentence, states:

> [W]e are unable to conclude that the sentence imposed reflects improper consideration or balancing of isolation, deterrence, and affirmation of community norms.

Thus, the majority's affirmance is based not upon the conclusion that the sentencing court properly balanced the relevant *Chaney* goals, but rather on a determination that the majority is unable to say that the *Chaney* goals were not properly balanced. In my view this holding signifies a radical departure from established norms of sentence review, for implicit in the majority's reasoning is the conclusion that a sentence will always be upheld on appeal unless the record contains an affirmative indication that the sentencing court's reasoning was clearly mistaken.

Reliance on such logic sets a dangerous precedent. In any case where a trial court imposes a sentence without explanation, remaining totally silent as to its reasons for formulating the sentence imposed, the logic espoused by the majority opinion would inevitably compel affirmance of the sentence on appeal; a sentencing record silent as to the trial court's reasons for imposing sentence would never affirmatively reflect "an improper consideration or balancing of [the *Chaney* goals]." If the reasoning of the majority's opinion is to be taken seriously, then trial courts could proceed to impose

sentences in a summary fashion, without explanation or comment, secure in the knowledge that their sentences would be upheld because the appellate courts would find no affirmative indication of an improper consideration of the *Chaney* goals.

If the sentencing remarks of the superior court in this case were sufficient, it would be a relatively simple task, on appeal, to apply the standard enunciated in *McClain v. State* and to determine whether the sentence imposed was clearly mistaken. I believe that it is only because the trial court's explanation of its sentence was so manifestly inadequate that the majority opinion has had to seek recourse in reasoning that, taken to its logical conclusion, would abrogate the need for any sentencing explanation whatsoever.

It is undisputed that full explanation of a sentencing decision contributes to the rationality of the sentence, facilitates the reviewing court's evaluation of the correctness of the sentence, and fosters public confidence in the criminal justice system. An ample explanation can also assist correction authorities in dealing with an offender and have therapeutic value in helping the defendant accept his sentence without bitterness. *Alpiak v. State*, 581 P.2d at 665 n.2; *Perrin v. State*, 543 P.2d at 418; *State v. Chaney*, 477 P.2d at 447. Here, I believe that the abbreviated sentencing explanation given below furnishes an entirely inadequate basis to serve any of these purposes.

Particularly where, as here, the sentencing judge has been provided with substantial new material on resentencing concerning the defendant, it is incumbent upon him to discuss this new material and to indicate if and how it has changed his assessment of such factors as the defendant's potential for rehabilitation and his possible danger to society. From the sentencing judge's comments here, it appears that he considered little except the technical change in the

---

Judge Buckalew, upon resentencing, took the time to analyze carefully and explain fully an appropriate sentence in light of the *Chaney* criteria. Similarly, I fail to understand how the majority can state with assurance that Houston's sentence could not in fact have been

based upon faulty legal or factual premises, when Judge Buckalew's failure to explain the sentence that he imposed precludes any informed decision as to the specific factors relied upon by the judge to support Houston's sentence.

crime charged, reacting to this change by adjusting Houston's original sentence in an almost mechanical fashion. It is impossible to tell which factors the sentencing judge thought pointed toward lengthy imprisonment, what weight the various factors received, or exactly what was considered in shaping the sentence. Where the sentencing explanation is sparse, the difficulty of informed appellate review is greatly increased. Beyond being deprived of a sufficient basis for determining whether the decision of the sentencing court was clearly mistaken, the reviewing court cannot be certain that impermissible considerations did not enter into the fashioning of the sentence. Where, as here, the remarks of the sentencing court were so sparse as to deprive the appellate court of any assurance that the judge considered all of the requi-

site sentencing goals, or that he balanced the relative importance of those goals in light of the particular circumstances of the case, then the task imposed upon the appellate court becomes more than merely burdensome; it becomes unrealistic.

For the foregoing reasons, I cannot agree with the majority's decision to affirm Houston's sentence. While I would not now hold that the sentence was excessive, I do not believe that a reasoned decision on this issue can be made without an adequate sentencing explanation by the superior court—an explanation reflecting appropriate consideration and application of all of the *Chaney* sentencing goals in light of the information available to the court at the time of sentencing.[3] Thus, I. would order the sentence vacated and remand to the superior court for resentencing based upon a thor-

---

**3.** While I would not, at this juncture, rule out the possibility that a sentence of 15 years with 3 suspended would be warranted in the present case, I believe that at least one facet of Houston's sentence requires additional comment. When Houston's sentence was originally imposed, the trial court recommended both psychiatric treatment and alcohol therapy. Four years later, at resentencing, it was apparent that Houston had been provided with neither psychiatric therapy nor alcohol rehabilitation. The record in the present case is particularly clear in establishing that the crime of which Houston was convicted was the product of a severe alcohol problem on Houston's part, with possible psychological difficulties underlying the alcohol abuse. Although the precise motivation for Houston's actions may not be clear, the direct link to alcohol abuse is manifest, and in this regard the majority is wrong in terming his crime an "unexplained homicide." This is not a case in which an offender has received prior opportunities for rehabilitation, but failed. *See, e.g., Tritt v. State,* 625 P.2d 882, 889 n.10 (Alaska App.1981); *Wire v. State,* 621 P.2d 18, 19 n.3 (Alaska App.1980). To the contrary, in the present case, Houston had taken the initiative and sought help for his alcoholism only a matter of days before this offense occurred. In response to his efforts, Houston received only minimal assistance, having been "dried out" over a two-day period at the Air Force hospital and released without any further provision for counselling, therapy, or other assistance. Under these circumstances, Houston's rapid return to his well-established pattern of alcoholism was all but a foregone conclusion. It is undisputed in this case that Houston's crime resulted directly from his alcohol abuse, and that, to the extent that Houston poses a danger to society, it is by virtue of his alcoholism and

the possible psychological problems underlying it. For these reasons, when Houston was originally sentenced, the trial court's recommendations for alcohol rehabilitation and psychiatric therapy were appropriate and justified measures. *See, e.g., Notaro v. State,* 608 P.2d 769 (Alaska 1980); *Good v. State,* 590 P.2d 420, 424–25 (Alaska 1979).

While the recommendation for alcohol rehabilitation and psychiatric counseling may have been realistic and appropriate measures when Houston's sentence was originally imposed, upon Houston's resentencing, four years later, it was evident that the court's original recommendations had gone unheeded. Contrary to the implication of the majority opinion, nothing in the record indicates a "difference of opinion" between the court and the Division of Corrections as to the defendant's need for therapy. The only logical inference I can draw from the record is that the court's initial recommendation was simply ignored. As the majority opinion points out, there is no assurance that Houston does not still constitute a danger to the community. However, the reason for this is the total lack of alcohol or psychiatric treatment afforded to Houston by the Division of Corrections over a four-year period. While trial courts must generally provide for rehabilitation of offenders through the use of sentencing recommendations, and while, under ordinary circumstances, it must be assumed that appropriate recommendations of a sentencing court will be heeded, judicial intervention and the exercise of more stringent judicial control over rehabilitation becomes necessary when there has been a demonstrated failure by the Division of Corrections to provide an appropriate course of treatment. *LaBarbera v. State,* 598 P.2d

ough consideration and discussion of the *Chaney* goals.

947, 949 (Alaska 1979); *Abraham v. State*, 585 P.2d 526, 530–33 (Alaska 1978). *See also* AS 12.55.088 and Alaska R.Crim.P. 35(b).

In the present case, despite the lack of psychiatric or alcohol rehabilitation or therapy, Houston had been a model prisoner over a period of four years' incarceration. What is particularly perplexing is that, although the sentencing court originally made appropriate recommendations for Houston's treatment and rehabilitation, upon resentencing, when it was apparent that its original recommendations had gone unheeded, instead of taking stronger measures aimed at assuring Houston's rehabilitation, the sentencing court—with utterly no explanation whatsoever—imposed a sentence that failed even to renew its original recommendations for treatment. The failure of the sentencing court to address Houston's need for alcohol counselling and psychiatric therapy is a virtual paradox. Regardless of the length of sentence Houston receives, it is certain that he will eventually be released from prison and reintegrated into society. If Houston is released without the problems that caused the tragic loss of life resulting in his conviction having been realistically addressed, it is predictable that he will pose as much of a potential danger as he did when first imprisoned. We have recently stated:

> There is a need for courts to address the problem of alcohol-related violence in serious as well as less serious cases. Courts are encouraged to look beyond the alternatives of incarceration and ordinary probation for creative solutions to the difficult rehabilitative problems posed by the alcohol-abusing offender.

*State v. Ahwinona*, 635 P.2d 488, 491 n.4 (Alaska App.1981). I believe it particularly apparent in this case that, in terms of Houston's

rehabilitation and protection of the community, a lengthy sentence will, in and of itself, accomplish little or nothing unless Houston's alcohol and psychological problems are realistically addressed.

To me, the sentencing court's failure even to renew its original recommendations for treatment is yet another indication of the inadequacy of the consideration given to applicable sentencing criteria in imposing Houston's new sentence. Contrary to the suggestion in the majority opinion, I do not think that the lack of any recommendation can be viewed as a mere "oversight." Rather, I think the omission is symptomatic. I am convinced that, had Judge Buckalew taken the time to express his reasons for sentencing Houston in a careful and thorough manner, he would not have neglected to address the issue of Houston's need for alcohol rehabilitation and psychiatric counseling.

As matters now stand, I would emphasize that the provisions of Alaska R.Crim.P. 35(b) permit the sentencing court to modify a sentence "at any time during a term of imprisonment if it finds that conditions or circumstances have changed since the original sentencing hearing such that the purposes of the original sentence are not being fulfilled." *See Fermoyle and Joe v. State*, 638 P.2d 1320 (Alaska App. 1982). I see no reason why the provisions of this rule would not be applicable to Houston's case, and I would urge the sentencing court to give serious consideration to the modification of Houston's sentence in order to assure that his alcohol abuse problem and any underlying psychological difficulties which he may have are treated as an integral part of his sentence and in a realistic manner. Clearly, in light of Houston's past treatment, more decisive measures are called for than a mere reinstatement of the original recommendation for treatment.